THE J. R. CROWE COAL & MINING COMPANY, *Appellee,* v. LILLIE ATKINSON *et al., Appellants.*

No. 17,173.

SYLLABUS BY THE COURT.

1. FINAL JUDGMENT—*Where All Issues in Controversy Tried to Jury Form of Action Immaterial.* Where a controversy over a question of the title and right of possession of real estate has been tried out in an injunction suit in which a jury trial has been had as a matter of right, and each party has had a full opportunity to present and support its contentions, even if it should be held that ejectment would have been a more proper form of action the judgment rendered will not be reversed on that account.

2. ADVERSE POSSESSION—*Possession of Surface Under Absolute Title Not Adverse to Previously Acquired Mining Right.* A possession of the surface of land, exercised for agricultural purposes only, although taken and held under an ordinary deed purporting to transfer the complete ownership, is not adverse as to mining rights previously severed by a reservation in a conveyance in the same chain of title.

3. DEED — *Reserving Underlying Minerals—Taxes—Ownership.* Where the owner of land executes a conveyance reserving the underlying minerals, the fact that he does not thereafter pay taxes on the mineral is not in derogation of his claim to its ownership, where it has not been separately assessed and the taxes charged against the land have not been increased by reason of its existence.

Appeal from Cherokee district court. Opinion filed July 7, 1911. Affirmed.

*Francis M. Brady, William F. Sapp,* and *Andrew S. Wilson,* for the appellants.

*A. H. Skidmore,* and *S. L. Walker,* for the appellee.

The opinion of the court was delivered by

MASON, J.: The J. R. Crowe Coal & Mining Company claimed to have the right to mine the coal underlying land the title to which, subject to that right, was conceded to be in Lillie Atkinson. It brought an action against her and her husband, Ed Atkinson, to enjoin them from interfering with its occupancy of so much of the land as was necessary to its mining operations. Judgment was rendered for the plaintiff, but this was reversed upon the ground that the defendants were entitled to a trial by jury. (*Atkinson v. Crowe,* 80 Kan. 161.) Upon a second trial a jury returned a verdict for the plaintiff, upon which a judgment was rendered, and the defendants again appeal.

The defendants maintain that they were in possession of the property in controversy under claim of title, and that therefore if the plaintiff was entitled to recover at all its remedy was by ejectment and not by injunction. Whether or not ejectment would have been an available remedy, the peculiar situation suggested plausible grounds for proceeding by injunction. Upon the first appeal the judgment was reversed specifically because a jury trial had been denied. The fact that the order of reversal was based wholly on this ground fairly implied that the action was regarded as maintainable in the form in which it was brought. Moreover, the parties have been afforded a fair opportunity to try out their controversy, the claims of each were fully understood by the other, and the judgment fixes their respective rights. In this situation the decree ought not to be disturbed on account of the form of the action. The defendants suggest that although a jury passed upon the evidence, its findings were only advisory, because that is the ordi-

Mining Co. v. Atkinson.

nary rule in injunction and other equitable proceedings. Here, however, this court reversed the first judgment because the issue involved was one upon which a jury trial was a matter of right. It follows that the decision of the jury was final unless set aside upon such grounds as would be available in ejectment or any strictly legal action.

The facts out of which the controversy grows are stated in the former opinion. They are substantially as follows: The land involved was formerly owned by the Kansas City, Fort Scott & Gulf Railroad Company. About July 20, 1881, that company executed a deed to Jeremiah Hogan. The plaintiff claims, and the defendants deny, that this deed contained a reservation of the coal and lead mineral underlying the land, with the right to enter upon the surface for the purpose of mining it. The deed was filed for record August 13, 1881. In the fall of 1885 some of the books of record in the office of the register of deeds, including that in which this deed was recorded, were destroyed by an explosion. Hogan gave an ordinary mortgage on the land, containing no reference to any reservation or exception. This was foreclosed without the railroad company being made a party, and the defendants claim through a sheriff's deed purporting to convey a complete title. The plaintiff has succeeded to the rights of the railroad company in connection with the coal. At the time the action was brought the defendants and those through whom they claim had been in the actual possession of the land for over fifteen years, asserting title through the sheriff's deed. They had never, however, undertaken any mining operations thereon, having used it for agricultural purposes only.

The principal question of fact is whether the deed from the railroad company contained a reservation of the mineral rights. The principal question of law is whether the continuous occupancy of the surface for fifteen years, under a deed purporting to convey the

entire property, barred the claim to the coal on the part of the railroad company and its grantee.

The jury specifically found that the deed did contain the reservation referred to, and we think the finding abundantly supported by the evidence. Annotations in official indexes which escaped destruction indicated an exception in the deed with regard to the minerals; there was testimony that deeds from the railroad company at that time contained the form of reservation claimed by the plaintiff; a portion of a partially destroyed volume was produced which apparently had contained the record of this deed, and so much of its language as was preserved supported the contention of the plaintiff. Objections are made to the competency of the evidence, but we do not think them well founded.

"The severance of the surface and mineral rights is accomplished either by a conveyance of the land with an express reservation of the minerals, or by a conveyance of the minerals or mining rights." (27 Cyc. 682; *Moore v. Griffin,* 72 Kan. 164.) "After the mineral is conveyed apart from the land, or *vice versa,* two separate estates exist, each of which is distinct; the surface and the mineral right are then held by separate and distinct titles in severalty, and each is a freehold estate of inheritance separate from and independent of the other." (27 Cyc. 687.) "Adverse possession of the surface of the land does not necessarily include possession of the minerals below it, where the title to the latter has been severed by deed from that to the surface." (1 A. & E. Encycl. of L. 875.)

While the mere occupancy of the surface, where a severance has previously been accomplished, does not of itself constitute adverse possession of the underlying mineral, there is room for a plausible argument that if the occupant of the surface claims under a deed which purports to convey a complete title to the entire

property his possession should be characterized by the terms of the instrument under which he holds and he should be deemed to be asserting dominion over the whole. But the authorities are practically uniform in holding to the contrary. Any use to which the surface of the ground may be put differs so widely in character from the extraction of the minerals thereunder—the operations are so disconnected and unrelated—that a possession exercised for agricultural purposes only, although taken and held under an ordinary deed purporting to transfer complete ownership, ought not to be deemed adverse as to mining rights previously severed by a reservation in a conveyance in the same chain of title. The following cases support this view: *Murray v. Allred,* 100 Tenn. 100; *Caldwell v. Copeland,* 37 Pa. St. 427; *Lulay et al., Appellants, v. Barnes,* 172 Pa. St. 331; *Gordon v. Park,* 202 Mo. 236, 219 Mo. 600; *Gill v. Fletcher,* 74 Ohio St. 295; *Catlin Coal Co. v. Lloyd,* 176 Ill. 275, 180 Ill. 398; *Steinman v. Jessee,* 108 Va. 567; *Marvin v. Brewster Iron Mining Co.,* 55 N. Y. 538.

The defendants undertake to distinguish these cases upon the ground that here the occupant of the surface had no knowledge or notice of the existence of a right to the minerals apart from the general title to the land. Whether they had actual information on the subject can not be controlling. The deed in which the severance was accomplished, by a reservation of the mineral rights, was duly recorded. While the record itself was destroyed, there remained sufficient annotations in the indexes to advise a careful examiner that it was not a deed in the ordinary form. An investigation of the clue thus afforded would have developed the actual fact. The defendants derived their title under this deed and can not under these circumstances found a right upon ignorance of its provisions. (*Taylor v. Mitchell,* 58 Kan. 194; *Knowles v. Williams,* 58 Kan. 221.)

The principle stated is really determinative of the controversy, and the specific rulings assigned as errors really present different aspects of the same question of law. Complaint is made of the refusal to submit a special question requiring the jury (among other matters) to say whether the possession of the defendants was adverse as to the plaintiff. This presented a question of law. The findings that were made sufficiently determine the essential facts in the case, and the general verdict was in accordance with them. In submitting a question concerning the possession of the "premises in question," the court, over the objection of the defendants, stated that the only property in dispute was the coal in place. This was certainly not prejudicial, as it tended to prevent a confusion of the issue. Most of the instructions refused, so far as they are consistent with the rule of law already announced, were in substance covered by the general charge. The court was asked to say that if the mineral rights had been reserved by the railroad company, it should thereafter have paid the taxes if it claimed to own the mineral. Instead the jury were told that prior to 1897 there was no provision of the law for the separate taxation of coal in place. As there is no showing that the coal was assessed as such, or that the taxes charged against the land were increased by reason of its existence, the nonpayment of taxes is not in derogation of a claim of ownership by the railroad company. An instruction was given to the effect that to enable the defendants to recover upon the theory of an adverse occupation for fifteen years they must have conducted mining operations continuously for that period. Whether the word "continuously" should have been used need not be determined, since it is conceded that no mining on the land was ever done by anyone prior to the beginning of this action. An instruction that the sheriff's deed could not affect the rights of the railroad company because it was not a party to the fore-

closure is criticised on the ground that under some circumstances the deed might be the basis of a claim or defense against the company. We think the language fairly meant merely that the company, not being a party, was not bound by the judgment, and its existing rights were not changed by it. Some evidence which was at first admitted was afterward ruled out. The defendants assert that prejudice to them resulted, but we see nothing in the record to indicate this.

The judgment is affirmed.