No. 30,644.

MRS. JESSIE HARGIS NOGRADY, *Appellant,* v. THE FOURTH NATIONAL BANK IN WICHITA, Administrator of the Estate of Andrew J. Hargis, Deceased, *Appellee.*

(12 P. 2d 787.)

Opinion filed July 9, 1932.

*F. Dumont Smith, Eustace Smith* and *Claude E. Chalfant,* all of Hutchinson, for the appellant.

*C. E. Branine, J. N. Tincher, C. E. Branine,* all of Hutchinson, *Henry V. Gott* and *J. W. Blood,* both of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Andrew J. Hargis, a resident of Sedgwick county, died intestate on March 9, 1924, and left surviving him his widow, three children, one of whom was the plaintiff, Jessie Hargis Nogrady, and also four grandchildren as his heirs at law. An administrator of the estate was duly appointed on March 21, 1924. The daughter, Jessie Hargis Nogrady, filed a claim against the estate in the probate court on March 18, 1926, three days before the expiration of the time for filing claims. Her claim was in the form of a petition for specific performance in which she alleged in brief that her father had, previous to his death, entered into a contract with her to convey or devise to her a tract of 320 acres of his land in Barber county, in consideration that she would convey to him or to some one he would designate parcels of real property she owned in Wichita. She alleged that she had transferred to him this property in accordance with the agreement. She asked that if it was found that the land was not devised to her by her father (and it was not), that the contract be specifically performed by decreeing the land to her; and if specific performance is found to be impossible,

that in the alternative she be allowed to recover damages from the estate for the value of the land in the sum of $20,000.

A motion or demurrer against the claim was filed by the administrator and the heirs of the deceased, on the ground that the probate court was without jurisdiction to hear and determine the claim. The motion to dismiss, or demurrer, as it was called, was allowed to slumber in the probate court from the time it was filed on March 18, 1926, until May 21, 1931, when it was called up by the claimant and upon a hearing in the probate court the demurrer was sustained, the court holding that it had no jurisdiction to hear and determine the claim. An appeal from that ruling was immediately taken to the district court, and on the —— day of August, 1931, the decision of the probate court was affirmed and the claim was dismissed. From this decision the present appeal has been taken.

During the five years that the claim was shelved in the probate court and apparently abandoned, Jessie Hargis Nogrady, on January 9, 1929, brought an action in the district court for the partition of the property of the estate, making the administrator and the other heirs parties to the action. Therein she alleged that her father died intestate, that at his death he owned numerous described tracts of land in Kansas and Oklahoma, that among the tracts of land in Kansas was the 320 acres in Barber county mentioned in the claim presented to the probate court by her. In the petition no mention was made that she owned that land or had any interest in it other than her proportionate share of the whole property as an heir under the laws of descents and distributions. She asked for a child's share of all the land, stating that there had been a postnuptial agreement between her father and his widow, which if sustained would give her a one-fifth part of the estate, but if not controlling she and the other children would only be entitled to one-tenth share. She then alleged:

"That all of the indebtedness and liabilities against said estate have been fully paid, and that a residue of money and personal property of said estate is now in the hands of said administrator, so that no portion of said described real estate is needed to pay indebtedness or liabilities of the said estate; that no order or decision has been made in said probate court determining who are the heirs of the said Andrew J. Hargis, deceased, nor has any distribution of property been ordered or made therein."

The prayer of her petition was:

"Wherefore, plaintiff prays for the judgment and decree of the court herein finding and decreeing the partition of all the said above described real estate

among the plaintiff and the defendants in accordance with their respective rights as found and determined by the court upon a hearing and determination of all the matters and questions involved herein; and for all other and further proper relief."

At the trial of the partition action in January, 1930, stipulations of the parties were filed and upon these the judgment was entered. One of the stipulations provided:

"It is stipulated and agreed that each of the defendant children, Andrew J. Hargis and Lydia G. Marsh, and the plaintiff, Jessie Hargis Nogrady, are entitled to a one-tenth undivided interest each, in the real and personal estate of Andrew J. Hargis, deceased."

There was no controversy as to who were the heirs of the testator, but some of the heirs owed obligations to the estate, some advancements had been made, and these were deducted proportionately from the share that each of the children inherited. It was decreed that plaintiff was entitled to one-tenth of the entire estate as described in the petition, amounting to $17,615.88, and it was decreed she should receive that amount less payments made to her on account of prior distribution, rents of property received, and some other items, leaving due to her a net balance of $9,903.18. In none of the pleadings or stipulations, and at no point of the proceedings, did plaintiff ever mention that she was the equitable owner of the land in Barber county or was entitled to an allowance on the claim she filed in the probate court. On the contrary, she alleged that the lands therein described, including the Barber county land, had passed to her and the other heirs by inheritance, and she asked that the entire property be partitioned among them in shares as she and the others had stipulated.

When the plaintiff's claim in the probate court had been revived by her, adversely decided, and this appeal had been taken, the defendant moved to dismiss the appeal upon the ground that the plaintiff by her action in the district court, as has been stated, had in effect abandoned her claim, and by her pleadings, admissions and other actions in the partition suit, including the acceptance of the benefits of the decree, from which no appeal was taken and which had become final, estopped herself from further prosecution of the claim. Certified copies of the pleadings and proceedings in the partition action brought by her fully establish the contentions of defendant's motion. Her allegations in the pleadings that the Barber county land belonged to the estate, a share of which she claimed by inheritance, her stipulation that she was entitled to a child's

share and no more, is wholly inconsistent with the claim of equitable ownership by reason of an alleged contract with her father in his lifetime. When she brought this subsequent action of partition and made the stipulations mentioned, asking that the Barber county land be regarded as a part of the entire estate, and stating that she inherited and should be given a daughter's share in accordance with the laws of descents and distributions, she chose her remedy and prosecuted it to a final decree, and practically abandoned her claim in the probate court. Ignoring that claim, she brought the administrator and the heirs of the testator into court asking that they join her in litigating and having determined the rights of each heir in inheriting the property. She effectually chose her ground of relief and prosecuted it to a finality. That relief was in direct antagonism with the theory that she was the equitable owner of the land by virtue of her contract with her father. Having elected this her remedy and pursued it to judgment and even to a distribution of the property of the estate on a wholly inconsistent theory, she was precluded from afterward pursuing another remedy based on a conflicting theory. In *Seaverns v. The State*, 76 Kan. 920, 93 Pac. 163, an occupant instituted proceedings to purchase a tract ·of school land as a settler. His petition was denied by the probate court and he appealed. He then purchased the land of the state at a public sale. Subsequently the district court dismissed his appeal, holding that the conduct of the appellant in purchasing the land at public sale was inconsistent with a claim of error in the judgment of the probate court and that the appeal was rightfully dismissed. In the opinion it was said:

"In the probate court the position of Seaverns was that, having complied with certain provisions of the law, he possessed an exclusive right to purchase the land as a settler, and that the state was under an obligation to him not to dispose of the land to any other person or in any other way. By undertaking to sell the land at public auction the state impliedly asserted that the judgment of the probate court denying Seaverns' right to purchase as a settler was valid, conclusive and just. By attending the public sale, engaging in competitive bidding with others, and buying the land, Seaverns necessarily abandoned his special claim as a settler and acknowledged the right of the state to sell to anyone who would bid the highest price. The purpose of the appeal was to reopen the controversy adjudicated in the probate court. After the land had been purchased by Seaverns at public sale all controversy regarding his right to purchase as a settler was at an end, and he had no standing to assert the contrary." (p. 923. See, also, authorities therein cited.)

It is argued that plaintiff's action does not constitute a waiver of

her rights to pursue her claim in the probate court which was pending all the time undetermined. But whether her conduct is to be designated as waiver or estoppel, it certainly operated as an effectual bar against the further prosecution of her claim. In *Bank v. Jesch*, 99 Kan. 797, 163 Pac. 150, where a landlord sought to prevent a tenant from harvesting a crop he had grown on the land on the theory that the term had expired, and it was shown that the landlord in conversations did not dispute the right of the tenant but recognized the existence of the right of the tenant to do so, it was held that the landlord was estopped by his conduct and apparent acquiescence to dispute the right of the tenant. It was said:

"In order for the conversation narrated to operate as a bar to a subsequent denial of the plaintiff's interest it is not necessary that there should have been a concurrence of all the elements of an estoppel, as the term is usually defined. 'Whether the principle is described as equitable estoppel, quasi estoppel, waiver, ratification, election, or as a requirement of consistency in conduct, is not very important.' (*Powers v. Scharling*, 76 Kan. 855, 859, 92 Pac. 1099.) 'The doctrine of equitable estoppel is frequently applied to transactions in which it is found that it would be unconscionable to permit a person to maintain a position inconsistent with one in which he has acquiesced.'" (p. 799.)

See, also, *Lillard v. Johnson County*, 102 Kan. 822, 172 Pac. 518; *Ireland v. Waymire*, 107 Kan. 384, 191 Pac. 304; *Pitt v. Keenan*, 124 Kan. 810, 262 Pac. 567.

The proof of the action of the plaintiff in the partition action, including the pleadings, proceedings and decree, all matters of record presented here on the motion to dismiss, and the evidence not open to dispute, are deemed sufficient to show that plaintiff is not now entitled to prosecute her appeal from the decision of the probate court. However obvious the answer may be to the question whether the probate court had jurisdiction to grant specific performance of the alleged contract, or grant alternative relief if specific performance is impossible, the decision already stated renders that question immaterial on this appeal.

The motion to dismiss the appeal to this court must be sustained. It is so ordered.