No. 32,521

DICK WILSON, Administrator de bonis non of the Estate of Charles
N. Stephenson, Deceased, *Appellee*, v. HULDAH STEPHENSON, A.
L. BARNER and T. H. MASON, *Appellants*.

(53 P. 2d 874)

Opinion filed
January 25, 1936.

*Joe T. Rogers*, of Wichita, for the appellants.

*E. J. Taggart, John Bradley*, both of Wellington, *W. L. Cunningham, D.
Arthur Walker, Fred G. Leach* and *William E. Cunningham*, all of Arkansas
City, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is by the defendants in
an action brought by an administrator *de bonis non* against the
former administratrix, who was the wife of the deceased and had
resigned after holding that position for more than five years.

The judgment was against her and her bondsmen covering three
items, about two of which there is no controversy here. The dif-
ferences arose over an item of $3,039.42 coming to the deceased
from the estate of his mother. The deceased had employed an
attorney to assist him in collecting his share of his mother's estate
and had signed a deed effecting such adjustment two days before
his death, which occurred on January 11, 1929, and the attorney
received the above-named amount on February 8, 1929.

The wife of the deceased was appointed administratrix and quali-
fied as such in April, 1929. She received from the attorney collect-
ing this for her husband—and who was afterward employed by her as
her attorney—both personally and as administratrix, the sum of $700
in September, 1929. The balance of this inheritance is the only
item involved in this controversy. The wife filed two inventories

which did not mention this item, nor the $700, as belonging to the estate of her husband, and made her final report without making any reference thereto. She was cited by the probate court on the request of a creditor to appear on February 9, 1931, for examination as to this item, at which time she testified under oath that her attorney was handling this fund, that he still had it, that it was put out at interest and he paid her interest thereon.

After this citation the administratrix, on the advice of her attorney, brought an action against the creditors of the estate and the other heirs in the district court in which she claimed all this inheritance money as belonging to her personally and not to the estate, and asking the court to so declare. This action was several months later dismissed without prejudice.

The attorney of the administratrix died in November, 1931, and in May, 1932, one of the creditors brought an action in the district court against the administratrix asking that this inheritance item be declared a part of the estate of the deceased and to require the administratrix to inventory it and account to the probate court for it. Judgment was rendered in this case against the administratrix in June, 1933, holding this inheritance money belonged to the estate of the deceased and not to his wife personally, and directing her to inventory the same in the probate court. She made such inventory in July, 1933, and resigned as administratrix in June, 1934.

The plaintiff in the action at bar was appointed administrator *de bonis non* in June, 1934, and commenced this action in September, 1934.

The plaintiff set up in his petition all the above statements in detail, together with many others, including the want of authority of the attorney to receive and receipt for this inheritance money about a month after the death of his client, the deceased in this action; the knowledge of the administratrix of this fact after September, 1929, when she received $700 thereof from such attorney, who was then her attorney personally and as administratrix, and her concealment of such collection and partial payment to her from the probate court until cited in that court to testify concerning the same.

The defendant answered by setting up in substance that her attorney had represented her family; that she had confidence in him; that he told her to bring the suit in Sedgwick county; that the money belonged to her individually and not to the estate by reason

of a letter or instrument executed by her husband in 1916; that it was not proper that he should turn over the money until the suit in Sedgwick county, Kansas, had been disposed of, but he finally gave her $700 and never gave her any more, and that he died totally and hopelessly insolvent, and that such money had not been lost by her negligence or carelessness.

The plaintiff replied by alleging in substance that defendant was estopped from claiming that her attorney had failed to turn over to her the money and estopped from asserting that the money had been lost and that such loss was not by her negligence, and was estopped from asserting that she was not liable for the money that came into the hands of her attorney.

The inventories, petition of the defendant in her case against the creditors and heirs and her testimony in the probate court given on the occasion of her citation were among the items of evidence introduced by the plaintiff in the case at bar.

Much of the testimony offered by the defendant in support of the denials and allegations of her answer was rejected by the court on objection of the plaintiff that it was inconsistent with the position formerly taken by the defendant, and at the close of the evidence the trial court sustained the application of the plaintiff for an instructed verdict in favor of the plaintiff. Such instruction was given, and a verdict was accordingly rendered for plaintiff, and judgment was rendered thereon against the defendant and her bondsmen, from which judgment this appeal is taken.

The appellants assign the following errors:

"The court erred in sustaining objections to the offer of evidence.

"That the court erred in holding the previous acts and declarations of the defendant estopped her from setting up that the money was lost without her negligence.

"The court erred in telling the jury to return a verdict in favor of the plaintiff and against the defendants.

"The court erred in overruling motion for new trial and entering judgment for the plaintiff."

Appellants insist that the apparent inconsistent position taken by the defendant in this case from what she had theretofore taken does not amount to estoppel because no one was misled by her previous position taken, and the plaintiff and creditors did not rely upon her former position, but resisted her claim, and she was unsuccessful in maintaining her former position in court, citing 21 C. J. 1223, *Light Co. v. Waller*, 65 Kan. 514, 70 Pac. 365; *Bank v. Duncan,*

80 Kan. 196, 101 Pac. 992; *Kington v. Ewart,* 100 Kan. 49, 164 Pac. 141, and other cases in support of this contention.

The contradiction or inconsistent feature of the Waller case was in a suit for damages where the defendant's answer contained a general denial of the negligence alleged in the petition, which was followed by an allegation of contributory negligence on the part of the plaintiff, and it was held that such pleas were not inconsistent, nor was the defendant estopped from denying the truth of an allegation in the petition by reason of the truth of such matter having been admitted by an attorney in his brief in a former appeal.

The Duncan case held that where a litigant asserted that he was indebted to a third person, not a party to the litigation, such was not conclusive upon him when subsequently sued by such person, which does not exactly apply to the situation here because of the fact that the creditors and heirs are the only litigants here concerned either by themselves or their representative, the administrator *de bonis non.*

The Kington case was like the Duncan case in that the parties to the litigation were not the same. The subsequent litigation was with a stranger to the earlier litigation, and the court held admissions in such earlier litigation was competent evidence, but was not conclusive, but open to explanation or rebuttal.

The following quotations from 21 C. J. 1223 are strongly in favor of the appellant's contention when limited to the case brought against the defendant by one of the creditors in which she was not successful in maintaining her position:

"A party who has, with knowledge of the facts, assumed a particular position in judicial proceedings, and has succeeded in maintaining that position, is estopped to assume a position inconsistent therewith to the prejudice of the adverse party. . . . It is essential also that the party claiming the estoppel should have been misled by his opponent's conduct, that he should have acted in reliance thereon, and that his rights would be injuriously affected if his opponent were permitted to change his position." (21 C. J. 1223, 1225.)

It must be observed in connection with this announced principle that the same text enumerates several different kinds of estoppel and distinguishes them. The above quotation is under the heading of Equitable Estoppel and Quasi-estoppel, the latter being defined in an earlier section of the same article on page 1202 as follows:

"The term 'quasi-estoppel' has been applied to certain legal bars which are in some respects analogous to estoppel *in pais* and which have the same prac-

tical operation as an estoppel *in pais,* but which nevertheless differ from that form of estoppel in essential particulars."

In the next section the work gives the grounds of estoppel generally as follows:

"Where a person has, with knowledge of the facts, acted or conducted himself in a particular manner, or asserted a particular claim, title or right, he cannot afterward assume a position inconsistent with such act, claim, or conduct to the prejudice of another who has acted in reliance on such conduct or representations. It is upon this just and equitable principle that a person is said to be estopped to take advantage of his own fraud or wrong. The doctrine of estoppel requires of a party consistency of conduct, when inconsistency would work substantial injury to the other party." (p. 1202.)

In a still earlier section of the same chapter, at page 1061, this work defines estoppel *in pais* as follows:

"By the earlier usage matter *in pais* commonly meant matter of fact as distinguished from matter of record. In the law of estoppel, however, it meant, and still means, matter of fact as distinguished from matter of record or conventional writing. 'Estoppel *in pais*' therefore includes all forms of estoppel not arising from a record, from a deed, or from a written contract."

It would appear that with the exception of the one suit by a creditor against this defendant the evidence refers to matters of fact to which the feature of successful maintenance of litigation will not apply.

The evidence introduced by the plaintiff in this case shows conclusively that appellant's attorney had no right whatever to collect this inheritance money after the death of his client, regardless of his contract with his client being on a contingent basis. (*Chase v. Chapman,* 89 Kan. 196, 131 Pac. 615.) Neither is there any question about her concealing this fact of the attorney collecting and having this inheritance money to the detriment of the creditors and other heirs until the statute of limitations may have run or nearly run for them to pursue both the parties paying it and receiving it without authority. She is presumed to know the law, and in this case to know that the attorney of her deceased husband had no right whatever to receive such money. The fact that his doing so was concealed from her for about seven months did not in any manner justify her in further concealing the fact of his having collected it and having paid part of it to her until she revealed it in probate court after a citation. Her inventories are matters of fact which were such as to mislead the creditors. Her employment of the same attorney that had unlawfully collected this money as attorney for

her as administratrix supplemented the wrong already done. Her statement of her position in the action she brought against the creditors and other heirs is a statement of matters of fact rather than matters of record or matters of law, and since the case was dismissed without any conclusion being reached, it does not come under the rule of successful maintenance of a cause of action, as urged by the appellant.

But eliminating the evidence of the proceeding brought by a creditor in which the defendant was unsuccessful, we have the other above-mentioned items showing a seriously inconsistent attitude and change of position on her part which was detrimental to the creditors and other heirs of the deceased whom the duty to protect was officially on defendant as administratrix. In the case of *Bank v. Jesch*, 99 Kan. 797, 163 Pac. 150, where the tenant's share of a crop which was mortgaged before he left the county was in controversy and the landowner agreed with the mortgagee to turn over the amount of the mortgage out of the crop, less the expense of harvesting, and later refused, it was there said:

"The defendant maintains that no estoppel could have resulted, because the plaintiff's position was in no way changed for the worse by reason of anything that had been said. In order for the conversation narrated to operate as a bar to a subsequent denial of the plaintiff's interest it is not necessary that there should have been a concurrence of all the elements of an estoppel, as the term is usually defined. 'Whether the principle is described as equitable estoppel, quasi-estoppel, waiver, ratification, election, or as a requirement of consistency in conduct, is not very important.' (*Powers v. Scharling*, 76 Kan. 855, 859, 92 Pac. 1099.) 'The doctrine of equitable estoppel is frequently applied to transactions in which it is found that it would be unconscionable to permit a person to maintain a position inconsistent with one in which he has acquiesced.' (10 R. C. L. 694.)". (p. 799.)

This doctrine was sustained and approved in *Nogrady v. Fourth National Bank*, 136 Kan. 43, 12 P. 2d 787.

Appellant insists that if the inheritance money was lost by no fault of hers, she is not liable, and cites the rule as to the degree and extent of diligence required, as stated in 23 C. J. 1203 and 1205 and *In re Beam*, 8 Kan. App. 835, 57 Pac. 854. In the case last cited it was said on page 838 that " 'An executor or administrator cannot be charged with debts or choses in action until he has actually received the money,' " but this statement is followed on the next page with an exception that—

"If the administrator should lose the right to recover such money, by neglecting to bring an action for its recovery before the right to do so was barred

by the statute of limitations, he would then be properly chargeable with the loss." (p. 839.)

The exception is at least partially involved in the case at bar.

The reference to 23 C. J. above is to the effect that an administrator is not liable for a debt not collected if he acted in good faith and with prudence and diligence, or where the loss occurred by mistake, and that the burden of showing lack of diligence and good faith is upon the party alleging the same, all of which must be readily conceded, but the same reference at page 1205 states:

"If a personal representative does not proceed promptly with the collection of debts, and in the meantime they become uncollectible by reason of the insolvency of the debtors, or other supervening cause, he is chargeable with negligence which renders him individually liable for the amount of the debts so lost, unless he can show some valid reason for his delay or failure to act."

In *Carr's Estate* (No. 1), 24 Pa. Superior Ct. 369, it was said:

"The case is not helped by the fact that the debtor here was the attorney of the testatrix in her lifetime and of the executor after her death. He could not act as a disinterested counsellor for the estate and at the same time act personally for himself. If the executor desired to shield himself behind legal advice, he should have secured disinterested advice from an independent source." (p. 376.)

To retain an attorney as her legal adviser after knowing that he collected inheritance money belonging to the deceased without lawful authority, and after he had concealed from her for several months the fact that he had collected it, and then to further conceal from the probate court, the creditors and other heirs such facts until cited for examination on the subject in probate court, and claiming to be the sole owner of such fund on the advice of such attorney, is certainly not acting with prudence and diligence in the interest of those whom she represented, and it was a position entirely inconsistent with that which she now assumes, which latter position is so much to the injury and disadvantage of the creditors and other heirs of the deceased as to amount to estoppel, and the trial court evidently concluded that evidence offered by the defendant did not explain, rebut or excuse the wrong done.

We therefore conclude that some of the evidence offered by defendant was properly excluded, that the peremptory instruction was properly given and the motion for a new trial was properly overruled.

The judgment is affirmed.