No. 34,638

Dena Dewees Fry et al., *Appellees,* v. Eva Louise Dewees et al., *Appellants.*

(99 P. 2d 844)

Opinion filed March 9, 1940.

*A. W. Hershberger, J. B. Patterson, Enos E. Hook, P. J. Warnick, George B. Collins, Wm. F. Pielsticker* and *W. C. Attwater,* all of Wichita, *Ben Jones,* of Lyons, *R. C. Davis, Warren H. White, Frank S. Hodge, Wm. H. Vernon, Jr.,* and *Eugene A. White,* all of Hutchinson, for the appellants.

*Harold Gibson,* of Lyons, for the appellees.

*G. L. Light* and *Auburn G. Light,* both of Liberal, as *amici curiae.*

The opinion of the court was delivered by

THIELE, J.: This was an action in partition, the general question being the right to force division and partition by owners of undivided interest in the fee to real estate and undisposed-of oil, gas and mineral rights therein as against other similar owners as well as against others having rights in a part or portion of the oil, gas and minerals as grantees or assignees from both plaintiffs and other defendants.

The controversy grows out of facts none of which are in dispute. One George Dewees died October 4, 1905, leaving a will in which he gave his widow a life estate in the west half of the northwest quarter of section 32, township 20, range 7, and the northeast quar-

ter of section 31, township 20, range 7 in Rice county, the remainder to his six children. There is some lack of uniformity in their names as disclosed in parts of the record. We shall refer to them as Frank Dewees, Dena Dewees Fry, Lily Reames, Mattie Fant, Effie D. Richards, and Georgia I. Brown. Frank Dewees died in 1933, leaving a will under which he gave his wife, Eva Louise Dewees, a life estate, and his daughters, Virginia Dewees and Viola Haxton, the remainder. In our statement of facts we shall ignore the spouses of those who were married at the various dates mentioned.

In March, 1936, the above-named owners executed two oil and gas leases to D. R. Lauck. One covered the above-described northeast quarter and was subsequently assigned to the defendant, C. L. Carlock. The other covered the west half of the northwest quarter described and was subsequently assigned to the defendants, C. L. Carlock and the Republic Natural Gas Company.

In November, 1936, the various owners of the fee, by a series of instruments entitled "Sale of Oil and Gas Royalty" conveyed to the various grantees therein named a one-half interest of the grantor's royalty under the oil and gas leases and as more particularly set out later. Each of these instruments covered the entire 240 acres. There was development under the lease on the eighty acres and two producing wells were drilled. In December, 1937, all of the persons having an interest in the proceeds arising from operations under that lease signed and delivered to the Skelly Oil Company a so-called division order providing for the division among themselves of moneys payable for oil produced from the eighty acres.

On January 3, 1939, Dena Dewees Fry, Lily Reames and Georgia I. Brown commenced this action in which all of the other owners of the fee or of any interest in the oil, gas and minerals were made defendants, seeking an adjudication of the respective claims of all parties; that they be adjudged tenants in common, and that the real estate be partitioned, etc. The demurrer of defendants, The Southland Royalty Company, R. L. Dutton and F. G. Stodder, on the ground of misjoinder of cause of action and failure to state sufficient facts was overruled. All of the defendants answered. While all of the answers are not identical, the general effect of each was to raise the question whether partition could legally be had, whether it was equitable, etc., which matters are discussed.

At the trial, the court found that plaintiffs, Dena Dewees Fry, Lily Reames and Georgia I. Brown, were each owners of the undi-

vided one-sixth of the surface and the reversionary interest after the expiration of the determinable fees, and that each retained and was the owner of 40/480 of the oil, gas and minerals in and under and that might be produced from the real estate. That defendants Effie D. Richards and Mattie Fant had like interests; that defendant Eva Louise Dewees had a like interest except that her share in the surface was 1/12 and in the reserved minerals was 20/480; that the defendants Viola Haxton and Virginia Dewees had like interests except that their shares were each 1/24 in the surface and 10/480 in the reserved minerals, and that each of the following defendants was the owner of determinable fee titles to the oil, gas and other minerals in and under and that may be produced from the real estate, each extending for fifteen years from November 5, 1936, except the Southland Royalty Company which extended fifteen years from November 7, 1936, viz., Roxa Carlock and N. C. Sevin, each 10/240; F. G. Stodder, R. L. Dutton, Southland Royalty Company, and H. T. Ritchie, each 20/240; H. T. Ritchie 40/480, and C. L. Carlock 100/480. It may here be observed there is no dispute that the shares were otherwise than as so found. The journal entry of judgment was later specifically clarified by a subsequent order to show that the oil and gas leasehold estate and the oil and gas leases were not subject to partition. As to the other interests, commissioners were appointed to make partition, but if partition could not be made they were directed to value and appraise the real estate in forty-acre tracts and to separately value the oil, gas and other minerals in or under or that might be produced from said real estate as in separate forty-acre tracts. A motion for a new trial was denied, and the several defendants thereafter perfected their appeals to this court.

In this court four groups of appellants have filed briefs presenting contentions from varying angles, the appellees have presented their views and we also have the benefit of a brief filed by *amici curiae*. Time and space will not permit detailed reference to each of the various theories presented and a discussion of the many authorities cited in support. Our review of all of them leads to the following conclusions.

We shall first consider the nature of the instruments headed "Sale of Oil and Gas Royalty," and what estates were created thereby. Without setting out copies thereof, it may be said they are in substantially the same form as the instruments set forth at length in *Shaffer v. Kansas Farmers Union Royalty Co.*, 146 Kan. 84, 85, 69

P. 2d 4, and *Hushaw v. Kansas Farmers Union Royalty Co.*, 149 Kan. 64, 65, 86 P. 2d 559, the holding period, however, being fifteen years. In both of the above cases, such instruments were held to be mineral deeds, and that the effect thereof was to segregate the title to the minerals from the remainder of the land. (See the cases cited in the opinions in the above-noted cases as well as *Sledd v. Munsell*, 149 Kan. 110, 86 P. 2d 567, and cases cited.) The instruments here involved were mineral deeds and effected a severance of the minerals from the remainder of the real estate. After the severance was so made, two separate and distinct estates existed, and both were estates in real property (*Mining Co. v. Atkinson*, 85 Kan. 357, 360, 116 Pac. 499). For convenience we shall refer to the estate in the minerals as the mineral estate, and to the estate in the surface and the reversionary interest, after the mineral deeds have expired by their terms, as the fee.

The owners of the fee are those who took under the will of the father, George Dewees, and under the will of his subsequently deceased son, Frank Dewees, and they stand in the relation one to the other of tenants in common. The owners of the mineral rights are made up of two general classes. As to the one-half interest not conveyed, the owners are the persons last above named, and as to the other one-half they are the grantees, or subsequent assignees of those named as grantees, in the mineral deeds above mentioned. These various owners stand in relation to one another as tenants in common.

To sustain the judgment of the lower court appellees contend that both classes are tenants in common in the entire estate and that partition may be enforced by any one tenant in common against his cotenants, and in support they cite *Rutland Savings Bank v. Norman*, 125 Kan. 797, 266 Pac. 98, wherein it was held:

"Two parties, each owning an undivided one-half interest in the oil and gas on a particular tract of land, acquired by separate conveyances from the same grantor, are tenants in common, notwithstanding one of them may also be the owner of the fee-simple title to the land. (*Jewell v. Gann*, 100 Kan. 43, 163 Pac. 645.)" (Syl. ¶ 1.)

Appellants contend that the two estates are separate and distinct and that the tenants in common in one estate do not sustain that relation to the tenants in common of the other estate, even though the same persons may be a part of both classes and they direct our attention to that part of the above opinion reciting:

"It is true she occupied a double capacity before redemption was made—that of owner of the land, and also owner of an undivided one-half interest in the oil and gas. Authorities are abundant to show that as owner of the land she would not be a cotenant with Grieves because their interests are entirely different, but not so far as the oil and gas interests are concerned." (p. 799.)

The opinion in the above case must be read and interpreted in light of the facts and the nature of the action. There the owners of real estate mortgaged the same to a bank. Thereafter they conveyed a one-half interest in the oil and gas to one Grieves. That opinion does not so state, but the conveyance was a mineral deed (see *Fairchild v. Ninnescah Oil & Gas Co.*, post, p. 551, 99 P. 2d 839, this day decided). The bank brought an action to foreclose, making the owners and Grieves parties defendant. The decree of foreclosure covered all interests in the real estate, both mineral and otherwise. Later Grieves, by appropriate action, had his interest established and was given a right to redeem, and later he did so. The question for decision was the right of one cotenant to contribute to another cotenant and participate in the redemption by reason of applicable legislation. We need not pursue that feature of the case. It was held that Grieves and the grantee of the original owners were cotenants in the mineral rights and that the grantee had a right to contribute. There is nothing in that case that warrants a conclusion that because the same person may be a cotenant with certain persons of a separate and distinct estate in realty and a cotenant with certain other persons of another separate and distinct estate in the same realty, that all of the cotenants in both estates are cotenants with each other. Tenancy in common is the holding of an estate in land by different persons under different titles, but there must be unity of possession, and each must have the right to occupy the whole in common with his cotenants. (See 62 C. J. [Tenancy in Common, §§ 1, 2], p. 408; 14 Am. Jur. [Cotenancy, § 16], p. 87; 1 Bouvier's Law Dictionary, Rawles 3d Revision, p. 1077; Cyclopedic Law Dictionary, p. 996.) In the case at bar the holders of the mineral rights had no right of possession whatever in the surface further than was expressly granted for ingress, egress and exploration. Had the owners of the surface conveyed all of their mineral rights instead of one-half thereof, they would have had no right of possession to any part thereof. Under the facts all of the parties were cotenants in the estate comprised of the mineral rights, but only a part of them were cotenants in the fee. The fact

there were some persons common to both classes of tenants in common did not make all of both classes tenants in common with each other in both estates. It follows that any action to partition as between the tenants in common of one estate would be separate and distinct from an action to partition the other estate. Certain of the defendants having an interest in the mineral estate only had demurred on the ground that several causes of action were improperly joined. Those demurrers should have been sustained. None of the defendants who had an interest in the fee demurred. Each of them filed answers under which no question is raised as to the right to have the fee (surface) partitioned, and to that extent the judgment is not erroneous.

The serious question is the right of a cotenant in the mineral estate to compel partition among the tenants in common.

Prior to 1868 our code of civil procedure provided that tenants in common might be compelled to make or suffer partition of the estate, but in the revision of that year the statute was changed to read as it now is:

"When the object of the action is to effect a partition of real property, the petition must describe the property and the respective interests of the owners thereof, if known." (G. S. 1935, 60-2101.)

And see *Squires v. Clark*, 17 Kan. 84, 87.

In *Kinkead v. Maxwell*, 75 Kan. 50, 88 Pac. 523, it was held:

"As a general rule every adult owner of an undivided fee-simple estate in real property is entitled to partition, as a matter of right." (Syl. ¶ 1.)

This holding was approved in *Beardsley v. Gas Co.*, 78 Kan. 571, 575, 96 Pac. 859, and *Barnes v. Barnes*, 140 Kan. 612, 614, 38 P. 2d 93, 96 A. L. R. 1277. In none of the above cases, however, was there any discussion of the provision of the code respecting partition that:

"The court shall have full power to make any order not inconsistent with the provisions of this article that may be necessary to make a just and equitable partition between the parties, and to secure their respective interests." (G. S. 1935, 60-2114.)

It has been held that while an action in partition is a statutory action, the court has substantially the same powers in administering it as were exercised by chancery courts under equity practice and that the last quoted section of the statute gives the court full power to settle all questions involved on just and equitable principles. (*Sarbach v. Newell*, 28 Kan. 642, 30 Kan. 102, 1 Pac. 30; *Scantlin v. Allison*, 32 Kan. 376, 379, 4 Pac. 618; *Phipps v. Phipps*, 47 Kan. 328,

336, 27 Pac. 972; *Hazen v. Webb,* 65 Kan. 38, 68 Pac. 1096; *Sawin v. Osborn,* 87 Kan. 828, 126 Pac. 1074, Ann. Cas. 1914A 647; *Thresher Co. v. Judd,* 104 Kan. 757, 180 Pac. 763; *Wright v. Simpson,* 142 Kan. 507, 51 P. 2d 1; *Young v. Young,* 148 Kan. 876, 84 P. 2d 916.) In none of these cases, however, was partition refused or denied. Nor is any decision of this court called to our attention where partition of real estate has been denied. The appeals now before us, however, present a question not heretofore considered.

Prior to the execution of the mineral deeds, the owners of the fee executed the two oil and gas leases, one on the eighty-acre tract, the other on the quarter section, and thereby, to a considerable extent, indicated an intention to devote the property to the exploration for and production of oil, gas and other minerals. Although these leases were originally made to the same person, at the time the action was begun the leases were held by different lessees, although one assignee was interested in both leaseholds. When the owners executed and delivered the mineral deeds, each covered both tracts and was made subject to the leases of record. Thereafter development was had on the eighty-acre tract resulting in production and thereafter all of the tenants in common of the mineral estate executed division orders setting forth the share each would receive from the oil produced. So long as production persists under these leases, there can be no independent development. Although it is no part of the record, it is stated in the briefs that since the trial a producing well has been completed on the quarter section. We do not have a situation where prior to development an attempt is being made to allocate specific tracts to specific persons. On the contrary, we have a situation showing progress under the leases to a point where production is being had, and so far as the eighty acres is concerned, an actual division thereof among those entitled. It happens that 240 acres of real estate are involved. If it be supposed the minerals underlie the ground uniformly, and partition in kind could be had, some of the holders would have five-acre tracts set off to them, others ten-acre tracts, and so on. In order for them to recover the minerals, each would have to be in position to compel the lessees to drill on their particular tracts. The lease makes no such requirement. The fact that oil, gas or other minerals were produced under either lease would not avail such an allotted owner unless the well were on the particular tract owned by him. See *Carlock v. Krug,* ante, p. 407, 99 P. 2d 858 (this day decided).

Were there a division in kind, it can readily be seen that it of necessity would result unfairly and inequitably.

Appellees argue, however, that if division in kind cannot be made without manifest injury, the entire mineral estate would be appraised and ordered sold and the proceeds divided. Assuming there are situations where that might be equitable and just, as in a case where partition is made before development is had, we have before us an entirely different situation. The two oil and gas leases to Lauck conveyed no interest in the land described, but merely a license to explore, and were personal property. (*Burden v. Gypsy Oil Co.*, 141 Kan. 147, 150, 151, 40 P. 2d 463, and cases cited.) The oil that may be produced under these leases is personal property. As has been noted, as long as the present leases continue in existence, there can be no independent development, the matter of division of shares in the one-eighth share paid by the lessees to the lessors, their grantees and assigns, has been completed by the mineral deeds, and partition to that extent has been made by voluntary act of the parties. The facts as presented negative any idea there will be surrender or forfeiture of the lease, and until that occurs there is only a theoretical, as distinguished from actual, opportunity for partition of the entire mineral rights. But the mineral deeds contain language contemplating subsequent leases, viz.:

". . . and in the event that the above-described lease for any reason becomes canceled or forfeited then and in that event an undivided 1/12 (shares varies in different instruments) of the lease interests and all future rentals and bonuses on said land for oil, gas and other mineral privileges shall be owned by the said grantee . . . together with 1/12 interest in all future events."

The mineral deeds convey not only minerals, but they also grant contract rights in personal property. Partition of personal property is not controlled by the provisions of the code of civil procedure, but is only to be had upon application of equitable principles, and the petition must state facts showing sufficient reason for equitable interference (*Beardsley v. Gas Co.*, supra). We think it rather clear that under the mineral deeds, rights have been granted both in real and personal property; that there has been division of the personal property insofar as the lease on the eighty-acre tract is concerned; that there is no allegation of fact respecting the personal property rights as to the lease on the quarter section, which would warrant equitable interference at this time. These rights are inextricably bound up with the pure mineral rights conveyed by the several mineral deeds.

Either to attempt to divide and partition the real estate so as to set off the interest of each cotenant therein, or failing to have that done, to sell the entire mineral estate would, if otherwise unobjectionable, result in confusion and turmoil, and create a situation promoting quarrels and possible litigation.

In our opinion, if a partition of the entire mineral estate is now ordered or permitted, the result will be inequitable and unjust to the various tenants in common.

That part of the judgment of the trial court ordering partition of the fee or surface right is affirmed. The remaining part of the judgment is reversed.