No. 46,219

MARIE FAST, et al., *Appellees,* v. NORA ELLEN FAST, et al., *Appellants.*

(496 P. 2d 171)

Opinion filed April 8, 1972.

*Bill R. Cole,* of Weinlood, Cole, Oswalt and Shaffer, of Hutchinson, argued the cause and was on the brief for the appellants.

*Wendell S. Holmes,* of Hutchinson, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

FOTH, C.: This is a dispute over an undivided one-twelfth (1/12) interest in the oil, gas and other minerals underlying a half-section of land in Reno County. Appellees, plaintiffs below, were granted summary judgment quieting their title to a collective five/eighths (5/8) interest in the undivided one-twelfth (1/12) as against the defendants, who have appealed.

The basic issue is whether a deed conveying real estate by surface description, with no qualifying, reserving or excepting language, conveys the grantor's interest in the underlying minerals when there has previously been a severance of the mineral estate.

The deed in question was executed March 21, 1955, by Jake Fast to his brother, C. F. Fast, and conveyed an undivided one-twelfth (1/12) interest in the described one-half section. No men-

tion was made of any minerals, either by way of conveyance or by reservation or exception.

Jake Fast died intestate on June 19, 1964, leaving numerous heirs. Plaintiffs collectively inherited five-eighths of Jake's estate, and so assert title to five-eighths of the subject mineral interest, which they claim did not pass under the deed. Defendants are heirs of C. F. Fast, who died, also intestate, on January 18, 1962. Their assertion is that the deed conveyed to C. F. a one-twelfth interest in the minerals as well as in the surface, and they claim through him.

It is undisputed that Maria Fast, mother of both Jake, C. F., and ten other children, executed a mineral deed on June 30, 1934, in which he conveyed to Jake an undivided one-twelfth interest "in and to all of the oil, gas and other minerals in and under, and that may be produced from" the half section, subject to an existing recorded oil and gas lease. The term of the grant was fifteen years and as long thereafter as oil or gas should be produced; there was production at the time, which continues to the present.

The instrument is substantially identical to those considered in such cases as *Richards v. Shearer*, 145 Kan. 88, 64 P. 2d 56; *Shaffer v. Kansas Farmers Union Royalty Co.*, 146 Kan. 84, 69 P. 2d 4; *Serena v. Rubin*, 146 Kan. 603, 72 P. 2d 995; *Sledd v. Munsell*, 149 Kan. 110, 86 P. 2d 567; and *Fry v. Dewees*, 151 Kan. 488, 99 P. 2d 844. In all such cases we have held that the instrument effects a severance of the minerals from the balance of the real estate—not so as to render it personal property but so as to subject it to separate ownership. In *Fry v. Dewees*, supra, we said (p. 492):

". . . The instruments here involved were mineral deeds and effected a severance of the minerals from the remainder of the real estate. After the severance was so made, two separate and distinct estates existed, and both were estates in real property (*Mining Co. v. Atkinson*, 85 Kan. 357, 360, 116 Pac. 499). For convenience we shall refer to the estate in the minerals as the mineral estate, and to the estate in the surface and the reversionary interest, after the mineral deeds have expired by their terms, as the fee."

We generalized on this proposition in *Shaffer v. Kansas Farmers Union Royalty Co.*, supra (pp. 88-9):

"It is well settled in this state that petroleum and natural gas are minerals and as long as they remain in the ground are a part of the realty and belong to the owner of the land. (*Zinc Co. v. Freeman*, 68 Kan. 691, 75 Pac. 995.) That is true notwithstanding the fact they are fugitive fluids. (*Gas Co. v. Oil Co.*, 83 Kan. 136, 140, 109 Pac. 1002.) When land contains minerals there may be separate ownership of the minerals in one person and the

remainder of the land in another. This separate ownership may be accomplished by the owner of the entire estate in the land conveying all of it except the minerals, or by conveying the minerals only. (*Mining Co. v. Atkinson,* 85 Kan. 357, 360, 116 Pac. 499.) An owner of land may convey all of it, or part of it. When he conveys but a part of it he may divide it vertically or horizontally, and he may convey full title, or a fractional interest in the whole or in any part."

From the foregoing it is clear that by virtue of the mineral deed of June 30, 1934, Jake acquired an undivided one-twelfth interest which was an estate in the minerals separate and apart from the "fee." From the transfer order executed by Maria the same day it appears she conveyed a similar one-twelfth mineral interest to each of her other eleven children. Through inheritance Jake acquired fractional interests in the "twelfths" owned by certain of his siblings who predeceased him, so that by the time of the 1955 deed he owned a total undivided interest which was more than his original one-twelfth.

We are not so favored by the record as to Jake's interest in the surface, although we were told in oral argument that in 1955 he owned it all. In any event, he owned at least the one-twelfth of the surface conveyed to C. F. The question is, did that one-twelfth carry with it one-twelfth of the underlying minerals?

The parties draw contrary inferences from the fact that the deed was by unembellished surface description (although the word "surface" was not employed). Plaintiffs say that since a separate mineral estate had previously been carved out of the fee specific language was required to convey such estate. They cite no cases in support of this proposition, relying wholly on a statement to that effect found in 54 Am. Jur. 2d, Mines and Minerals, § 116, which in turn relies on four cases from other jurisdictions which support it in varying degrees.

Defendants say that since Jake owned both estates he was required to use appropriate language if he didn't intend to convey both. They rely on K. S. A. 58-2202, which provides:

". . . every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear or be necessarily implied in the terms of the grant."

This statute (and its identical predecessor, R. S. 67-202), has been liberally construed over the years as one designed to simplify in this state the ancient and arcane art of common law conveyancing. Thus, it has been read to provide a ready answer to the effect of

a deed for courthouse purposes, obviating the necessity of resolving "profound questions" involving "those abstruse subtleties of law involved in base or determinable fees, estates upon implied conditions, qualified fees with conditional limitations or with conditions subsequent, to treat of which with proper comprehensiveness might require us to resort to authorities like Lyttleton and Coke for their proper determination." (*Finney County Comm'rs v. Welch*, 133 Kan. 258, 260, 299 Pac. 600.)

Similarly, in *Platt v. Woodland*, 121 Kan. 291, 246 Pac. 1017, after reviewing the authorities and statutes relating to conveyances, we said (p. 298):

". . . From these statutes it is clear that, so far as conveyance by deed is concerned, the distinction between estates proper and other interests in land has been obliterated, and the result is, the word estate is used in R. S. 67-202 as a general and not a technical term. It connotes whatever the grantor could convey, and the statute is to be read as though it were phrased, 'Every conveyance of real estate shall pass all the interest of the grantor therein, unless the intent to pass a lesser interest shall expressly appear or be necessarily implied in the terms of the grant.'"

It has also been relied on for the proposition that a conveyance which specifically excepts land previously granted for school or railroad right of way purposes nevertheless conveys the grantor's interest in the land previously deeded, *i. e.*, the servient estate. The exception was held to refer only to the dominant estate, *i. e.*, the easement for school or right of way purposes. *Roxana Petroleum Corp. v. Jarvis*, 127 Kan. 365, 273 Pac. 661; *Barker v. Lashbrook*, 128 Kan. 595, 279 Pac. 12; *Shell Petroleum Corporation v. Hollow*, 70 F. 2d 811 (10th Cir. 1934).

A corollary of the broad construction given to what is granted is the strict construction given to reservation or exception, or, as was said in *Keller v. Ely*, 192 Kan. 698, 391 P. 2d 132:

"In harmony with our statute (G. S. 1949, 67-202), which provides that every conveyance of real estate shall pass all of the estate of the grantor therein unless the intent to pass a less estate shall expressly appear or be necessarily implied in the terms of the grant, a deed is to be construed strictly against the grantor and to confer upon the grantee the greatest estate that its terms will permit." (Syl. ¶ 2.)

In that case a reservation to the grantor of "all of the oil, gas, casinghead gas and other liquid semi-solid and solid minerals" in and under the conveyed land was held not to be a sufficient description to include gypsum; the gypsum under the surface passed to the grantee despite the reservation.

Although neither party cites it, we believe the basic question here is controlled by *Brungardt v. Smith,* 178 Kan. 629, 290 P. 2d 1039. The land in question there was owned by a Mary Smith. At the time she executed the critical deed the land was subject to several oil and gas leases, and also mineral deeds of record, the primary term of which had not expired. Hence, although the question was not discussed in the opinion, it is clear that under the authorities cited earlier herein there had been a severance of several mineral interests.

The deed executed by Mrs. Smith was, in form, a general warranty deed. It made no mention of minerals in the granting or habendum clauses, merely describing the land by survey description, but in the covenant and warranty clause it excepted an oil and gas lease and "seven hundred fifty (750) acres of royalty commonly known as $^{15}\!\!/_{16}$ths royalty or mineral interest." It was claimed that the deed was intended to convey only a $^{1}\!\!/_{16}$th mineral interest, with $^{15}\!\!/_{16}$ths to be reserved. Indeed, about a month later Mrs. Smith purported to convey a $^{15}\!\!/_{16}$ths mineral interest to a corporation, reciting that it was the same $^{15}\!\!/_{16}$ths retained and reserved in the earlier deed.

The trial court found the exceptions effectively reserved to Mrs. Smith the $^{15}\!\!/_{16}$ths mineral interest referred to in the covenant and warranty clause. On appeal this court reversed, saying (Id., at 637-8):

". . . We must start with the statutory declaration that every conveyance of real estate shall pass all of the estate of the grantor unless the intent to pass a less estate expressly appears or is necessarily implied in the terms of the grant. No such intention appears in the granting and habendum clauses. The only exceptions are in the covenant and warranty clause and, as stated, are only limitations on the covenant that the real estate is free, discharged and unencumbered from all former and other grants. We think it clear from the deed considered as a whole that the exceptions were limitations only on the covenants and that they may not be said to have cut down the grant and reserved title to $^{15}\!\!/_{16}$ths of the minerals to the grantor."

The result was a remand to determine the status of the outstanding mineral deeds and to quiet the grantee's title to the land and minerals, subject to the rights of the grantees of the prior unexpired mineral conveyances.

As noted, no mention was made of the effect of the prior severance of any mineral estate. It was *assumed* that under the statute a general warranty deed carries with it *all* the grantor's interest—even in a severed mineral estate—unless the *terms of the grant*

unmistakably negate such intent. The language there employed did not measure up to that standard, and the minerals went with the surface.

Here, we have no reservation or exception at all. We have only a grantor who, owning more than one-twelfth of both the surface and the minerals, conveyed an undivided one-twelfth interest in described real estate by general warranty deed. We hold that by such deed Jake conveyed an undivided one-twelfth interest in both surface and minerals.

Plaintiffs assert in this court that defendants are estopped from claiming title to the minerals under the 1955 deed because Jake continued to receive royalties and pay taxes on the one-twelfth interest until he died in 1964, and because both Jake and C. F. Fast signed division orders after 1955 which accounted for ownership changes in other shares of the royalty but did nothing about the one-twelfth here in issue.

Plaintiffs concede that the facts do not rise to the dignity of a true estoppel, for there is nothing to show active misrepresentation or concealment, an intent that anyone should rely on facts misrepresented or concealed, or any detrimental reliance. Thus at least three of the five essential elements of estoppel are absent. See *Place v. Place,* 207 Kan. 734, Syl. ¶ 4, 486 P. 2d 1354. At best we have an acquiescence by C. F. in a continuing course of conduct which was, if anything, beneficial to Jake. In *Wagner v. Sunray Mid-Continent Oil Co.,* 182 Kan. 81, 318 P. 2d 1039, we held that the signing of a division order might estop the signer *vis-a-vis* the oil company, but worked no estoppel as against rival claimants to the mineral interest, saying, "rather than reliance by the defendants to their detriment, plaintiffs' signing of the division orders in fact gave them a benefit to which they were not entitled." (Id., at 93.)

"Quasi-estoppel," as now urged by plaintiffs, must be based on the previous assertion of a position so inconsistent with the one now taken as to make the present claim unconscionable. See *Bank v. Jesch,* 99 Kan. 797, 163 Pac. 150; *Nogrady v. Fourth National Bank,* 136 Kan. 43, 12 P. 2d 787; *Wilson v. Stephenson,* 143 Kan. 91, 53 P. 2d 874. We find nothing in the conduct of C. F. which would bring this doctrine into play. The argument was rejected under very similar circumstances in *Brungardt v. Smith,* supra, although there no royalties were involved. In short, we are unable to find the elements of either a genuine or quasi-estoppel in the facts before us.

In view of the result we reach we need not consider defendants' contention that the issue is *res judicata* by reason of proceedings in the probate court in Jake's estate.

The judgment is reversed and the case is remanded for further proceedings, giving the deed in question the effect we have found herein.

APPROVED BY THE COURT.

FONTRON, J., not participating.