LEWIS E. CHASE et al., Copartners, etc., *Appellees*, v.
H. R. CHAPMAN, *Appellant.*

No. 17,894.

SYLLABUS BY THE COURT.

1. CONTRACT—*Agency to Sell Real Estate—Not a "Power Coupled
with an Interest."* To constitute a power coupled with an
interest there must be an interest in the thing itself, and
not merely in the execution of the power. An agency or
privilege to sell real property and receive all the proceeds
above a certain sum as commission is not a power coupled
with an interest; nor does an agreement on the part of a
managing agent to be responsible to the principal for all
general losses in the conduct of a business result in making
him an agent with such an interest.

2. ———— *Mismanagement — Rescission of Contract — Account-
ing.* A contract between plaintiffs, who were the owners of a
flouring mill, and the defendant provided that the owners were
to furnish money to repair the mill and capital to operate it
until it could be sold; the defendant to have full management
and control the property and business, and if he found a
purchaser he was to have as his commissions all the proceeds
of the sale above a specified sum. He was to be paid a fixed
salary and agreed to become responsible for all general losses
incurred in the operation of the mill, giving security to plain-
tiffs for that purpose, but was to have no interest in the
profits of the business. *Held*, that his relation to the prop-
erty was not that of an agency "coupled with an interest,"
nor was it beyond the power of equity to control; and that
plaintiffs might maintain a suit before the expiration of the
contract to compel an accounting and to rescind and annul the
contract so far as the same authorized his employment, on
the ground of his misconduct as manager.

Appeal from Brown district court.   Opinion filed
April 12, 1913.   Affirmed.

*F. M. Pearl, W. F. Means,* both of Hiawatha, *W. S.
Glass,* of Marysville, and *T. J. Madden,* of Kansas City,
Mo., for the appellant.

*Sample F. Newlon,* of Hiawatha, and *C. F. Reavis,* of
Falls City, Neb., for the appellees.

Chase v. Chapman.

The opinion of the court was delivered by

PORTER, J.: The appellees were the owners of a flouring mill which they had purchased in 1909 at a trustees' sale in bankruptcy. The appellant is an experienced miller, and appellees claim that he represented to them that if the mill were properly repaired he could operate it with profit to them, and after it had become a going concern he could sell it at an advanced price. A written contract was entered into by which the appellees agreed to furnish $2000 to repair the mill and to provide $9000 as capital with which to operate it. The appellant was to have the sole management and control of the mill and the business and receive a salary of $1500 per year. The contract was to extend for two years unless he succeeded before that time in finding a purchaser, and he was to have as commission for effecting a sale of the property all the proceeds above the sum of $30,000. As indemnity against general losses from the operation of the mill he executed a note for $25,000, payable to the appellees and secured by a mortgage on property of his own.

The repairs to the mill proved to be more expensive than was expected, and the appellees advanced for that purpose about $5000. After the mill had been operated for one year they became dissatisfied with the way in which he had managed the business and brought this suit to compel an accounting and to cancel and annul the contract so far as it concerned his employment as manager. Only a partial rescission was asked for, as they were willing to allow him to retain the privilege of selling the property according to the terms of the contract.

As grounds for the intervention of equity the petition alleged that the appellant had so mismanaged the business that the losses already amounted to more than $11,000, that he had denied their request for an accounting, and that unless he was removed from the

position as manager the losses would exceed the mortgage held by them as indemnity. It was alleged that the appellant had unlawfully and willfully appropriated to his own use large sums of money from the business without their knowledge or consent, and had attempted to misappropriate other funds belonging to the appellees in payment of his personal obligations.

The answer admitted the execution of the contract and denied generally the other allegations of the petition, and as a further defense alleged a failure of appellees to furnish the amount of capital for carrying on the business as agreed upon, and set up a counterclaim for damages caused by a number of alleged breaches of the contract.

On the trial appellant demanded a jury, which was refused, and the case was tried to the court, resulting in findings in substance that the facts alleged in the petition were true, and that the appellant had conducted the business in such a careless and unbusinesslike manner as to cause heavy losses to the appellees; that if his management and control continued the losses would in all likelihood exceed the indemnity and result in a destruction of the business. The court further found that while acting as manager appellant had in many instances unlawfully and willfully misappropriated the funds of the business to his personal use, and had attempted to appropriate other large sums in the payment of his personal obligations; that the general losses in the business amounted to the sum of $9167.75; that before bringing the suit the appellees had demanded of appellant an accounting, and that the same had been refused.

The court therefore rendered a judgment canceling and annulling the contract so far as it authorized the employment of appellant as manager, and holding appellees entitled to an accounting of the business in order that the amount due upon the mortgage might be determined.

There was a conflict in the evidence upon all the issues of fact, and since the court found the facts against the appellant, there remains but little for this court to pass upon. There is a contention, to begin with, that the contract was so unconscionable and one-sided that a court of equity ought to decline to enforce it as against the appellant. The evidence, however, shows that it was entered into with deliberation, at the suggestion of the appellant himself, who was an experienced miller. None of the appellees seems to have had any previous knowledge or experience in the business. We find nothing in the contract to prevent equity from enforcing its provisions as against the appellant, or that would justify a court of equity in declaring it unconscionable or void.

Another contention is that the very ground upon which it was asked to have the contract annulled, that is, losses in the business, was anticipated and provided for in the contract, and that while equity will lend its aid to enforce, it will never assist in the violation of a contract. This contention loses sight of the fraudulent acts charged against him as manager which are sustained by the findings of the court. It can hardly be said that the indemnity was given or accepted in contemplation of losses expected to result from the willful and unlawful appropriation of funds by the appellant. But in any view, the violation of the trust and confidence reposed in him by his employers was enough to authorize equity to intervene to prevent further losses resulting from his malfeasance and misfeasance. The contract itself necessitated an accounting, and the refusal of a demand for one was an additional ground for equitable relief. The demurrer to the petition was properly overruled, and for the same reasons the appellant was not entitled to a jury trial as a matter of right.

Passing numerous assignments of error based wholly upon the claim that the evidence was not sufficient to

support the findings and judgment, there remains the contention that, because appellant became responsible to answer for the general losses of the business, his employment with his agency to sell was coupled with an interest, and that therefore it is beyond the province of equity to cancel or set aside the contract. The main purpose of the contract as we view it, and as the trial court obviously construed it, was the sale of the property. In order to secure a sale on favorable terms it was deemed advisable to put the mill in operation as a going concern. The more successful the business might prove to be the more was the property likely to sell for, to the mutual advantage of all concerned. The operation of the mill as a business was merely incidental. It was believed that it might require as much as two years' operation of the business to bring about the desired result; it might require less time. The appellant was not employed for the full term of two years, except conditionally. Nor did he acquire an interest in the property itself. His compensation was a fixed salary for a conditional term, and, in the event he procured a purchaser, he was to have all the property sold for above a specified sum.

"To constitute a power coupled with an interest, there must be an interest in the thing itself, and not merely in the execution of the power." (*Hunt v. Rousmanier*, 21 U. S. 174, syl., 5 L. Ed. 589.)

It has been often decided that a commission out of the proceeds of a sale of real estate to be made is not such an interest. (*Kolb v. Land Co.*, 74 Miss. 567, 570, 21 South. 233; 1 A. & E. Encyl. of L. 1218, note 4.)

"A mere power to sell real property and receive all the proceeds above a certain sum as commission is not a power coupled with an interest." (*Simpson, et al., v. Carson*, 11 Ore. 361, syl., 8 Pac. 325.)

Besides, the privilege or power to sell the property and to earn the commissions provided for by the con-

Chase v. Chapman.

tract was not revoked or annulled, but on the contrary, appellant's powers and privileges in that respect were expressly preserved in the decree. By his contract to be answerable for the general losses in the operation of the mill he acquired no interest in the property itself.

"It is not enough to constitute a 'power coupled with an interest' that plaintiff was to have an interest in the proceeds arising from the execution of the agency. There must be an interest in the thing itself which is the subject of the power, and not merely in that which is produced by the exercise of the power. A 'power coupled with an interest' is one ingrafted on an estate, or on the thing itself; and the power and the estate must be united and co-exist." (*Alworth v. Seymour,* 42 Minn. 526, 528, 44 N. W. 315.)

The contract here, in express terms, provided that all the profits of the business should belong to the appellees, and that the appellant should have no interest in or to them. The facts do not warrant the claim that at any period of the existence of the contract the appellant's relation to the property was that of an agency "coupled with an interest" that was irrevocable or beyond the power of equity to control.

As we observed before, he sustained to his employers a fiduciary relation. The court has found that he violated his trust, that a continuance of the relations created by the contract would in all likelihood result in further loss, and that the appellees were entitled to an accounting. These facts are in our opinion sufficient to sustain the judgment and it will be affirmed.