No. 33,081

THE STATE OF KANSAS, *Appellee*, v. V. L. DETWILER, *Appellant*, and W. T. ROUSE, Jr.

(62 P. 2d 895)

Opinion filed December 12, 1936.

*J. N. Tincher, Clyde Raleigh* and *Leaford F. Cushenbery*, all of Hutchinson, for the appellant.

*Clarence V. Beck*, attorney general, *J. S. Parker*, assistant attorney general, *Alex Hotchkiss*, of Lyndon, and *Donald J. Magaw*, of Ellsworth, for the appellee.

The opinion of the court was delivered by

BURCH, C. J.: The action was one by the state to recover motor-vehicle fuel tax. The state was uncertain whether the facts would disclose liability of V. L. Detwiler to pay the tax, or liability of W. T. Rouse, Jr., so the state sued both. At the close of the evidence, the state dismissed as to Rouse. The case was taken from the jury and judgment was rendered against Detwiler. Detwiler appeals.

Detwiler was a distributor who had procured a license to distribute motor-vehicle fuels at 618 East Ninth street, in Newton. The license was not assignable, was for transaction of business at the designated place only, and the law required the license should be at all times conspicuously displayed at the place for which it was issued. (R. S. 1933 Supp. 79-3063.) Rouse was a licensed distributor at another place in Newton.

One licensed distributor may sell or deliver to another licensed distributor without payment of tax. (R. S. 1933 Supp. 79-3068.) Rouse delivered some gasoline to Sam Boller without payment of tax, and after Rouse was dismissed the question was whether Detwiler was liable for the tax.

Detwiler could not be liable to the state for unpaid tax on gasoline which he neither purchased nor received. He could purchase or receive gasoline in one of two ways: First, acting for himself, and second, acting by someone else who had authority, or apparent authority, to purchase or receive for him. Rouse sold and delivered to Boller. Who was Boller?

Boller was engaged in the sale of motor-vehicle fuels at his own station on South Kansas avenue, in Newton. He was not a licensed distributor, and could not buy from a licensed distributor without paying the tax.

Previous to December, 1933, Detwiler had been supplying filling stations with gasoline purchased, tax-free, from the Vickers Petroleum Company. Early in December, 1933, Detwiler moved from Newton to Pratt, and made an arrangement with Boller whereby Boller was to supply the filling stations with gasoline purchased from the Vickers company, using Detwiler's license. In this way, Boller could obtain gasoline without paying the tax, and the arrangement was to continue until Boller could make bond and procure a distributor's license, or until Detwiler's license expired in June, 1934. Boller was to account for the tax to Detwiler. Boller purchased from Detwiler some tanks and some barrels. One tank was on Detwiler's truck, which Boller was permitted to use. The other tank was in Detwiler's station, and Boller removed it to his own station. Detwiler did not sell his station, his retail business or his truck, and of course the license could not be transferred.

There was a dispute in the testimony concerning some terms of the arrangement between Detwiler and Boller. Detwiler claimed the terms were not complied with, and on January 6, 1934, Detwiler dis-

charged Boller. Detwiler demanded possession of the truck, instructed an attorney to take the steps necessary to get possession of the truck, and notified the Vickers Petroleum Company not to deliver any more gasoline to Boller.

The state pleaded that the arrangement between Detwiler and Boller was one of agency, Rouse pleaded that Boller was the agent of Detwiler, Detwiler admitted that the relation between Boller and himself was one of agency, and it is clear that the relation between Detwiler and Boller was that of principal and agent.

Boller's authority to purchase gasoline of the Vickers company having been revoked, the Vickers company would not sell to him and he went to Rouse. The purpose of the action was to recover tax on gasoline sold by Rouse to Boller, invoiced "V. L. Detwiler by Sam Boller."

The following testimony given by Detwiler was not disputed by the state or by Rouse:

"That some time after January 14 he learned that Boller had charged gasoline to him at the Rouse Oil Company; that he was told this by Lacy Black, state inspector for the tax department; that he and Mr. Black went to see Rouse.

"Q. Will you state what the conversation was at that time with Mr. Rouse with reference to this gasoline that Boller had bought? A. I asked Mr. Rouse where he got any authority to sell any man anything in my name and assume that I would be responsible for the taxes. I further asked him if he had any letter from me, if he had a telephone call, or if he had ever met me, and he said 'no', and I said then, 'Who is going to be responsible for this tax?' and he said, 'I guess I am.'

"Q. Had you ever had any communication of any kind with Rouse before? A. Never saw the man and never knew he existed.

"Q. Had you ever bought gasoline from any place besides the Vickers? A. Never had."

Disregarding the testimony, how could Detwiler be liable for tax on gasoline which Rouse delivered, tax-free, to Boller after Boller's authority to act for Detwiler had been revoked?

At the close of the testimony the state moved for judgment against Detwiler on the sole ground the proof showed Boller did not consent to revocation of his authority. Boller testified he did not consent. Detwiler testified Boller did consent. The state's brief contains the following:

"It is shown by the abstract and admitted by defendant, Detwiler, that one Sam Boller was the agent of the defendant, Detwiler. An effort was made about January 6, 1934, to terminate this agency by the action of Detwiler

alone. This was not agreed to by the agent, Boller, and has not yet been determined."

Boller's consent or nonconsent was wholly immaterial. His authority was revoked.

"§ 118. Revocation or Renunciation.

"Authority terminates if the principal or the agent manifests to the other dissent to its continuance.

"*Comment:*

"a. Such termination by act of the principal is revocation; by act of the agent, it is renunciation.

"b. *Power to revoke or renounce.* The principal has power to revoke and the agent has power to renounce, although doing so is in violation of a contract between the parties and although the authority is expressed to be irrevocable." (Restatement, Agency, § 118.)

Boller's remedy in such a case would be by way of damages for wrongful revocation, but he no longer had authority to act for Detwiler.

In this court the state seeks to mend its hold by contending Boller's authority was coupled with an interest, and so could not be revoked by Detwiler alone. An interest in what? In execution of the agency to procure gasoline, tax-free, with which to supply filling stations, and nothing more. Power of an agent to act in his own name is essential to existence of a power coupled with an interest. (*Chase v. Chapman,* 89 Kan. 196, 131 Pac. 615, and cases cited in the opinion; 2 C. J. 531, § 155.) Boller could not act in his own name with respect to anything connected with his agency, did not pretend to do so, and the fact he might make a profit out of conduct of the agency did not enlarge his power:

"5. In consideration of $1,000 and A's promise to endeavor to sell, P grants to A for a period of one year a power of attorney to sell property, with compensation at 25 percent of the selling price, the power of attorney ending with this phrase: 'Hereby intending and agreeing that this power shall be irrevocable during one year, and that during this period A shall have a power coupled with an interest which shall not be affected by my death or other circumstances.' At the end of three months P informs A that he revokes. A's authority is terminated." (Restatement, Agency, § 118, Illustration 5.)

The state contends Boller had apparent authority to obtain tax-free gasoline on Detwiler's account.

Some of the gasoline which Rouse sold was delivered to the tank belonging to Boller, on the truck belonging to Detwiler, which Detwiler left in Boller's possession. On the truck was painted Detwiler's

name and license number. Rouse was not warranted in believing Boller could buy tax-free gasoline on Detwiler's credit as a licensed distributor because Boller was driving Detwiler's truck. (*Tice v. Crowder*, 119 Kan. 494, 240 Pac. 964; *Sturm* v. *Continental Oil Co.*, 131 Kan. 518, 523, 292 Pac. 774.)

The remainder of the gasoline was delivered at Boller's own station, and Boller testified he exhibited Detwiler's license. The law relating to use of a distributor's license has been referred to. H. L. Crapson, a deputy of the oil-inspection department and a witness for the state, testified that distributor's licenses are to be posted in the place of business, are not to be carried around, and are not used in buying gasoline, but are tax matters.

None of the gasoline purchased from Rouse was delivered at Detwiler's station where the license was posted the last Detwiler knew about it, and there was no testimony that Boller ever did any gasoline business there on anybody's account.

Restatement, Agency, § 27, reads:

"Except for the execution of instruments under seal or for the conduct of transactions required by statute to be authorized in a particular way, apparent authority to do an act may be created by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes a third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him."

The state did not call Rouse as a witness, and he did not testify. If, in consequence of conduct of Detwiler, Rouse was caused to believe Boller had authority to represent Detwiler, the state could have shown the fact. The state did not choose to do so, and the subject of apparent authority goes out of the case.

The state says Detwiler did not surrender his license as a distributor at his station in Newton. Detwiler said he was not ready to do so when he discharged Boller. The subject is immaterial. License or no license, Boller could bind Detwiler only in the event he had real or apparent authority to do so.

The result of the foregoing is, Boller had no authority to receive tax-free gasoline from Rouse for Detwiler. Aside from the fact proper indicia of apparent authority were lacking, there was a complete failure of proof that Rouse dealt with Boller on the faith of any apparent authority, and the state made no case against Detwiler.

The judgment of the district court is reversed and the cause is remanded with direction to enter judgment against the state, and in favor of Detwiler for costs.