No. 55,637

Cobus J. Heyen, *Plaintiff-Appellee,* v. Drew Hartnett, Mary Evelyn Hartnett Hazen, and Benj. E. Evans, *Defendants-Appellants.*

(679 P.2d 1152)

Opinion filed March 24, 1984.

*James P. Mize,* of Clark, Mize & Linville, Chartered, of Salina, argued the cause and was on the brief for the appellants.

*Dale J. Paulsen,* of Paulsen & McClure, of St. John, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Prager, J.: This is an action for a declaratory judgment to construe a certain mineral deed and to determine the ownership

of the parties in the oil and gas and other minerals located in a certain tract of land in Stafford County. The essential facts in the case are undisputed. The mineral deed in question was executed and delivered in June of 1925. The handwritten deed provided as follows:

"Deed to An Undivided Interest in Oil, Gas and Other Minerals

"This Indenture, made this _____ day of June A.D., 1925 between D. C. Masters of Stafford County, Kansas the party of the first part (whether one or more) and Andrew W. Hartnett and Benj. E. Evans, of Stafford County, Kansas the party of the second part.

"Witnesseth: That the said party of the first part, for and in consideration of the sum of

"One Dollar and other valuable considerations. Dollars ($1.00)

To us in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, does by these presents grant, bargain, sell, release and forever quitclaim unto the said party of the second part and to heirs and assigns forever an undivided 1/16 interest in and to all of the oil, gas and other minerals whatsoever in and under the following described lands situate in Stafford County, State of Kansas, to-wit:

The North half of the North West Quarter of Section 32 in Township 22, south, of Range 11 West of the 6th P.M.

of Section _____, Township _____, south, Range _____ east of the 6th P.M., and containing 80 acres more or less. Together with the rights of ingress and egress at all times for the purpose of mining, drilling and exploring said land, for oil, gas and other minerals, and removing the same therefrom, and any and all rights and privileges necessary, incident to, or convenient for the economical operation of said land for such purposes.

"To Have And To Hold all and singular said premises, together with the appurtenances and privileges thereto incident unto the said party of the second part, heirs and assigns forever.

"If such land is covered by a valid oil and gas or other mineral lease, the party of the second part,—heirs and assigns, by this instrument shall have an undivided ½ interest in the Royalties, Rentals, and Proceeds therefrom, of whatsoever nature.

"Witness Our Hands and Seals the day and year first above written.

"Witness: D.C. Masters (Seal)"

The deed was acknowledged before a notary public by the grantor, D.C. Masters, on June 13, 1925, and recorded on December 5, 1925.

The record shows that there was no existing oil and gas lease on the tract at the time the mineral deed was executed. The grantor, D.C. Masters, and one of the grantees, Andrew W. Hartnett, died prior to the commencement of this action. The defendants, Drew Hartnett and his sister, Mary Evelyn Hartnett Hazen, are the successors in title and owners of record of the

interest acquired by the grantee, Andrew W. Hartnett. In the years following the execution of this mineral deed, D.C. Masters, by warranty deed dated October 26, 1926, deeded the east 60 acres of the tract to H.L. Hart except gas and oil royalty held by Hartnett and Evans. On October 24, 1927, D.C. Masters conveyed the west 20 acres of the tract to H.L. Hart subject to existing oil and mineral reservations of 1/16th to Hartnett and Evans. On November 30, 1928, H.L. Hart and his wife conveyed the entire 80-acre tract to the plaintiff, Cobus J. Heyen, except an oil and mineral reservation of 1/16th to Hartnett and Evans. At the time these conveyances were made by Masters to Hart and later from Hart to Heyen, there was no existing oil and gas lease on the tract.

On August 31, 1936, all of the parties to this action joined as lessors in an oil and gas lease to Stanolind Oil and Gas Company. Stanolind promptly discovered and produced oil from the property continuously from 1936 until 1969. Plaintiff Heyen admitted at the trial that he knew when the lease to Stanolind was made that the defendants were claiming a ½ interest in the minerals in the property. Plaintiff also admitted that Stanolind paid him one-half of the $3,000 cash bonus for that lease and paid the defendants the other one-half. After oil was produced on the property, the plaintiff executed and delivered to Stanolind a division order which guaranteed and warranted the legal ownership of the oil produced from the property to be as follows:

Stanolind Oil and Gas Company ⅞;
Cobus J. Heyen ½ of ⅛ royalty interest;
Benj. E. Evans ¼ of ⅛ royalty interest;
The Hartnetts ¼ of ⅛ royalty interest.

The Stanolind oil and gas lease, which was signed by all parties, provided that payment of royalties on oil and gas due and payable under the lease should be divided ½ to Cobus J. Heyen, ¼ to Benj. E. Evans, and ¼ to the Hartnetts.

Throughout the thirty-three year period from 1936 to 1969, Stanolind produced oil under the lease, and royalty payments were made in accordance with the lease provisions and the division order set forth above—½ to plaintiff Heyen, ¼ to Evans, and ¼ to the Hartnetts. In 1969, production ceased on the land and the Stanolind lease expired.

Between December of 1977 and June of 1980 an oil and gas

leasehold interest was created in Iannitti Oil Company by a series of four separate leases from each separate mineral owner. The lease from the plaintiff, Heyen, dated June 2, 1980, to Iannitti contained this special clause:

"Lessor hereby reserves an undivided 1/16 of ⅞ of all oil, gas and other hydrocarbons produced, saved and marketed from the above land under the terms of this lease, as an overriding royalty."

Iannitti testified plaintiff refused to give the lease unless it contained such an overriding royalty interest "to make up for all of the interest or royalty that he no longer owned."

This action was filed by Heyen on January 20, 1981. Pending this action, the defendant, Benj. E. Evans, died on January 2, 1982. Drew Hartnett, as executor of the Evans estate, entered his appearance on behalf of the estate. Thus at the time of the trial all of the parties to the mineral deed were deceased. It should be noted that the defendants, in addition to filing an answer to the petition of plaintiff, filed a counterclaim seeking to recover damages from plaintiff for slander of title by this action.

In the district court, and again on this appeal, the position of the parties was basically as follows: Plaintiff Heyen maintained, in substance, that the 1925 mineral deed was not ambiguous. He contended that the granting clause of the mineral deed expressly conveyed an undivided 1/16th perpetual mineral interest in the property to Hartnett and Evans, but that the parties added a contingency clause at the end of the granting clause which allowed them to receive ½ of the royalty *if*, and only if, such land was covered by a valid oil and gas or mineral lease at the time the mineral deed was executed. Since there was no existing oil and gas lease at the time the mineral deed was executed, the required contingency did not occur and hence the provision giving the grantees an undivided ½ of the royalties never became effective and must be disregarded. He further maintained that, when plaintiff signed the Stanolind lease, although he knew that he owned an undivided 15/16ths of the oil, gas and minerals under the property, he knew that all interests could not be leased unless he agreed to accept only one-half of the royalty. He waived his right to take his lawful share of and accepted one-half of the royalty. He contended that, since the Iannitti lease was an entirely different lease, plaintiff is not barred by laches or the statute of limitations, and he has a right to receive his lawful 15/16th royalty interest under the Iannitti lease.

The defendants, on the other hand, have consistently maintained that the 1925 mineral deed should be construed to convey to the grantees one-half of the oil and gas and other minerals in the land, that is, such a mineral interest as is sufficient to carry and support the grantees' right to "an undivided ½ interest in the Royalties, Rentals, and Proceeds therefrom, of whatsoever nature," when such land is covered by a valid oil and gas or other mineral lease. The defendants contended that the mineral deed is ambiguous and must, therefore, be construed against the grantor in favor of the grantees. They further contended that an examination of the mineral deed from its four corners shows that it was the intent of the grantor and grantees for the grantees to receive an undivided ½ interest in the royalties, and that the provision for a grant of an undivided 1/16th interest in the minerals simply arose as a result of a mutual mistake or miscalculation as to the mineral interest required to vest in the grantees one-half of the royalties produced under any oil and gas lease. The defendants further asserted the affirmative defense of laches, waiver, and the statute of limitations based on the grantor's recognition of and acquiescence in the defendants' claim for a period of more than 30 years under the Stanolind lease.

The case was submitted to the trial court for decision. It found that an ambiguity did exist in the mineral deed in question and that it was required to consider extrinsic evidence to establish the true intent of the parties to the instrument. The court noted the distinction between a mineral interest and a royalty interest. The court found from the evidence that the plaintiff owned 15/16ths of the minerals in place in the property and that the defendants owned 1/16th of the minerals in place in the property. As to the claimed royalty interest of the defendants, the court noted that the property was not covered by a valid oil and gas lease in June of 1925, when the document was executed. The court concluded that, if the parties had intended the grantees to receive one-half of the royalties for any future lease, the word "if" would not have been used in the clause addressing the royalty issue. Also the court noted the deed would have given the grantees the right of ingress and egress in the specific paragraph granting the royalty interest. Thus, the court reasoned

that, since there was no valid oil and gas lease in existence at the time the mineral deed was executed in 1925, the grantees took no royalty interest. The trial court rejected the contention that the plaintiff was barred from claiming ownership of 15/16ths of the minerals because of laches, estoppel, acquiescence, or the statute of limitation. Under all the circumstances, the trial court found that the defendants owned only 1/16th of the minerals in place and 1/128ths of the royalty payable under the Iannitti Oil Company lease. The trial court denied the defendants' counterclaim for slander of title. The defendants appealed.

The first point raised by the defendants on the appeal is that the trial court erred in construing the ambiguous mineral deed strictly in favor of the grantor and strictly against the grantees. At the outset, it would be helpful to consider some of the basic principles to be followed in construing deeds and other instruments conveying an interest in real estate. We agree with the trial court that the 1925 mineral deed was ambiguous and, therefore, the rules for construction of deeds must be applied in this case. The recognized principles are as follows:

(1) The fundamental rule in construing the effect of written instruments is that the intent and purpose of the parties be determined from an examination of the entire instrument or from its four corners. Thus the language used anywhere in the instrument should be taken into consideration and construed in harmony with other provisions. In *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.*, 189 Kan. 125, 129, 368 P.2d 19 (1962), the general rule was applied in the construction of a mineral deed where the provisions of a deed were ambiguous as to the intention of the grantor.

(2) Where a deed is ambiguous, all of the surrounding facts and circumstances attendant upon its execution may be considered in order to ascertain and carry out the intention of the parties. *Siegel v. Hackler, Administrator*, 181 Kan. 316, 310 P.2d 914 (1957).

(3) Where there is an ambiguity in a deed making two constructions possible, one which will be favorable to the grantee and one more favorable to the grantor, and there is no outside aid to construction, that method of construction most favorable to the grantee will be selected. *Corbin v. Moser*, 195 Kan. 252, 403 P.2d 800 (1965); *Fast v. Fast*, 209 Kan. 24, 496 P.2d 171 (1972);

*Gotheridge v. Unified School District,* 212 Kan. 798, 512 P.2d 478 (1973); *Energy Transp. Systems, Inc. v. Union Pac. R.R. Co.,* 456 F. Supp. 154, 164 (D. Kan. 1978). This rule has a statutory basis in K.S.A. 58-2202 which provides in part that "every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear or be necessarily implied in the terms of the grant."

(4) The ancient rule to the effect that the habendum clause of a deed controls the granting clause has lost much of its former force. Today courts construe a deed by considering all of its language contained anywhere in the instrument with a view to ascertaining the intent of the grantor. *Brungardt v. Smith,* 178 Kan. 629, 290 P:2d 1039 (1955).

(5) Subsequent conduct of parties to a contract or written instrument may aid interpretation of controversial provisions. If parties to a contract, subsequent to its execution, have shown by their conduct that they have placed a common interpretation on the contract, this interpretation will be given great weight in determining the meaning to be attributed to the provisions in question. *Cline v. Angle,* 216 Kan. 328, 532 P.2d 1093 (1975).

With these principles in mind, we turn now to the construction of the 1925 mineral deed. Although, as noted above, we agree with the trial court that the mineral deed was ambiguous, we have concluded that the trial court erred in its construction of the mineral deed and that the ambiguous mineral deed should be construed to convey to the grantees an undivided one-half of the oil and gas and other minerals in the land so as to carry out the intent of the parties to provide the grantees an undivided one-half interest in the royalties, rentals, and proceeds therefrom of whatsoever nature, whenever the land is covered by a valid oil and gas lease.

In arriving at this conclusion, we must disagree with the trial court's conclusion that the word "if" must be construed to mean that, unless the property was covered by a valid subsisting oil and gas lease on the day when the mineral deed was executed and delivered, the final clause of the deed giving to the grantees an undivided one-half interest in the royalties, rentals, and proceeds therefrom is to be totally nullified and disregarded. The trial court overlooked the fact that the word "if" has several meanings, including "in the event that," referring to a future

happening. (Webster's Third New International Dictionary, p. 1124.) We think it inconceivable that the parties to the mineral deed were not fully aware that there was no existing oil and gas lease on the property at the time the mineral deed was executed in June of 1925. To adopt such a construction would require us to find that the parties were accomplishing a wholly useless thing by the insertion of the final clause in the deed.

There are several other provisions in the deed which, in our judgment, establish the intention of the parties. We note that whatever interest was granted, it was intended to be perpetual, for the word "forever" appears twice in the initial clause of the deed. Furthermore, it is important to note that the grantees were granted the right of ingress and egress *"at all times"* for the purpose of exploring the land for oil and gas and other minerals and the right to remove the same and to operate on the land for such purposes. It seems obvious to us that future exploration, drilling, and, hopefully, production of oil and gas was contemplated by the parties at the time the deed was executed.

It also cannot be denied that the trial court's construction of the word "if," so as to require an *existing* oil and gas lease at the time the mineral lease was executed, was not the construction which all parties placed on it during the thirty-three years Stanolind produced oil and gas under its lease made eleven years after the mineral deed. People buy oil and gas and other minerals for one purpose—to get a share of the production and the income resulting therefrom.

Finally, the widespread confusion as to the fractional interest in the minerals required to produce a certain share of the royalties under an oil and gas lease has been recognized by this court. We believe that the use of the fraction "1/16" in the initial clause of this mineral deed was simply an error commonly made in the early days of oil and gas conveyancing. The confusion is not uncommon today. In *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.*, 189 Kan. at 134-35, there is an excellent discussion of this early day misconception and misuse of the fraction "1/16th" when "½" was really intended:

"It is not uncommon for parties to mineral deeds or reservations, where a royalty or mineral interest is conveyed or reserved subject to an existing oil and gas lease, to confuse the fractional interest conveyed or reserved. Such confusion occurred in the instant deed. The reservation states 'an undivided ¼ of the landowners ⅛ royalty, or, 1/32 of the interest in and to oil, gas or other miner-

als . . . in and under the said land.' This court has previously considered fractional discrepancies created by such confusion. (*Lathrop v. Eyestone*, [170 Kan. 419, 227 P.2d 136 (1951)]; *Froelich v. United Royalty Co.*, [178 Kan. 503, 290 P.2d 93 (1955), *modified* 179 Kan. 652, 297 P.2d 1106 (1956)]; *Magnusson v. Colorado Oil & Gas Corp.*, [183 Kan. 568, 331 P.2d 577 (1958)].) In the Magnusson case it was pointed out that it was not only persons in the petroleum industry who made this type of inadvertent mistake, but on occasion the mistake has been made by courts, and it was said:

" 'As the most common leasing arrangement provides for a one-eighth royalty reserved to the lessor, the confusion of fractional interests stems primarily from the mistaken premise that all the lessor-landowner owns is a one-eighth royalty. In conveying minerals subject to an existing lease and also assigning a corresponding fractional interest in the royalties received, mistake is often made in the fraction of the minerals conveyed by multiplying the intended fraction by one-eighth. Thus, if a conveyance of an undivided one-half of the minerals is intended, the parties will multiply one-half by one-eighth and the instrument will erroneously specify a conveyance of one-sixteenth of the minerals upon the assumption that one-sixteenth is one-half of what the grantor owns. An ambiguity is created because the instrument will also show that the conveyance of one-sixteenth of the minerals is meant to entitle the grantor to one-half of the royalty. Of course, an undivided one-half of the minerals is needed to carry one-half of any royalties reserved.' (l.c. 576.)

"And so here. In computing the fractional interest reserved the parties were aware of the existence of the Jennings leases providing for ⅛th royalty to the landowner, and it is obvious the scrivener multiplied ¼th by ⅛th and the instrument erroneously specified a reservation of ¹⁄32nd as the interest reserved, apparently upon the assumption that ¹⁄32nd interest in and to all oil, gas or other minerals, would constitute ownership of ¼th of the landowners' ⅛th royalty, when the intention of the reservation as disclosed by its other terms indicate that the fraction ¼th should have been used instead of the fraction ¹⁄32nd. When this is done, the intent of the grantor is clear and no ambiguity exists. Hence, contrary to plaintiffs' contention, no occasion exists for the application of any rule of construction to aid in the interpretation of the reservation."

On the basis of the reasoning set forth above, we hold that the ambiguous mineral deed of 1925 should be construed to convey to the grantees an undivided ½ interest in the oil and gas and other minerals in and under the land in question, so as to carry out the intention of the parties to give the grantees and their successors in title an undivided ½ interest in the royalties produced under the Iannitti lease. The trial court erred in holding to the contrary. Since we have decided the defendants' first point in this manner, it is not necessary for us to consider the contention of defendants that the plaintiff is barred by laches, acquiescence, waiver, or the statute of limitations, resulting from his course of conduct throughout the years.

The defendants' final point on the appeal is that they are entitled to maintain their counterclaim seeking damages for slander of title as a result of the bringing of this action by the plaintiff. We have concluded that the defendants have no cause of action for slander of title under the circumstances shown in this case. Because of the ambiguity in the deed, we cannot say that the plaintiff brought this action for a declaratory judgment with malice, without probable cause, and not in good faith.

The judgment of the district court is reversed. Judgment is entered in favor of the defendants and the interests of the parties in the oil and gas and other minerals located in the tract of land involved are determined in the manner set forth in the opinion.