NOT DESIGNATED FOR PUBLICATION

No. 116,364

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JAMES F. SHEPHERD,
*Appellee*,

v.

PAULINE THOMPSON, *et al.*,
*Appellants*.

MEMORANDUM OPINION

Appeal from Seward District Court; BRADLEY E. AMBROSIER, judge. Opinion filed June 23, 2017. Affirmed.

*Anthony T. Hunter*, of Wichita, for appellants.

*Lane L. Frymire* and *Nathanial C. Foreman*, of Yoxall, Antrim, Foreman & Frymire, LLP, of Liberal, for appellee.

Before BUSER, P.J., PIERRON and STANDRIDGE, JJ.

*Per Curiam*: The district court granted summary judgment in favor of Appellee, James Shepherd, and found he owned, in fee simple, title to all of the oil, gas, and other minerals lying in and under the real property at issue. Appellants, Pauline Thompson, *et al.*, timely appeal and argue that the district court (1) improperly found the disputed deed was ambiguous; (2) improperly applied a statutory rule of construction; and (3) improperly interpreted the applicable statute of limitations.

1

The corrective deed was in fact ambiguous, as it did not name a remainderman. The district court properly applied the statutory rule of construction in reaching its conclusion, and properly interpreted the applicable statute of limitations. The district court is affirmed.

On September 25, 1982, Carl Broiler and Darlene Broiler were divorced in Stevens County. A journal entry was filed in their divorce case on December 27, 1982. From this journal entry, Carl received as his sole and separate property, all of the parties' interest in and to the "Southwest Quarter (SW/4) of Section Sixteen (16), Township Thirty-two (32) South, Range Thirty-four (34) West of the 6th P.M., Seward County, Kansas," (real property).

On December 2, 1983, Darlene filed a release of judgment in the divorce case releasing her judgment lien, which arose out of the divorce case against the real property. On January 19, 1985, Carl was the sole owner of the surface and water rights in the property. On this day as well, Carl held an undivided one-half interest in and to the minerals underlying the real property, subject only to a life estate in an undivided one-fourth of the oil, gas, and other minerals reserved by Irena Kapp in a deed dated August 1973.

Pursuant to a contract with Carl, Appellants purchased the real property. On January 19, 1985, Carl prepared, signed, and delivered to Appellee a general warranty deed, which was dated January 19, 1985. This deed was filed in the office of the Seward County Register of Deeds on February 6, 1985. The deed conveyed to Appellee "the surface and water rights" to the real property, "[e]xcepting and reserving unto grantor a life estate in and to all of the oil, gas and other minerals lying in, under and that may be produced therefrom together with the rights of ingress and egress for the purpose of producing the same."

2

On January 10, 1986, Carl prepared, signed, and delivered to Appellee a corrective deed to correct the original deed to list the property in Seward County, rather than Stevens County, which had been erroneously stated in the original deed. Other than the change to the correct county, the corrective deed was identical to the original deed.

On March 31, 1989, a writ of execution was issued in Carl and Darlene's divorce case, directing the sheriff of Seward County to attach certain property, including the real property. The writ of execution was recorded in the Seward County Register of Deeds office. The sheriff executed on the real property, and on May 4, 1989, an order of sale was filed in the divorce case between Carl and Darlene, which directed the sheriff to sell the minerals underlying the real property. As a result of the sale, Darlene received the sheriff's deed dated July 2, 1990, from the sheriff, which conveyed to her the "minerals and minerals only" in the real property.

Irena Kapp died on February 3, 1986, and the life estate held by her terminated. On April 11, 2012, Carl died.

On January 21, 2015, Appellee filed a petition to quiet title to the real property. Appellee argued that after the death of Irena and Carl, he was the sole owner in fee simple title to the minerals from real property. In addition, he argued any interest or ownership Appellants claimed had expired on Carl's death.

On March 17, 2016, Appellee filed a motion for summary judgment. He argued that when he received the original deed and corrective deed to the real property, he did so free and clear of any judgment lien Darlene had on the real property. The original deed and corrective deed transferred the surface of the real property to Appellee on their execution and delivery. When Carl died, his life estate terminated and the minerals were then transferred to Appellee.

On March 25, 2016, Appellants filed a motion for summary judgment. They argued the central issue in the case was whether the deed to Appellee included the one-half mineral interest that Carl owned, subsequent to Irena's one-quarter life estate. In addition, Appellants argued the plain reading of the warranty deed from Carl showed the intent to pass only the surface and water rights to Appellee. In conclusion, they stated the district court should have found against Appellee and in favor of them that the ownership of the minerals in the real property "be vested with a fee simple title in and to an undivided fee simple interest in the oil, gas, and other minerals underlying" the real property.

On May 6, 2016, the district court heard the competing motions for summary judgment. The court found Appellee's cause of action, to quiet title to a mineral estate, was subject to the 15-year statute of limitations under K.S.A. 60-507. The cause of action did not begin to accrue until Carl died on April 11, 2012, at which point Carl's life estate ended and Appellee's interest in the minerals became adverse to Appellants.

Regarding the deed, the district court stated the corrective deed granted to Appellee for "surface and water rights in and to" the real property, while expressly reserving to Carl "a life estate in and to all of the oil, gas and other minerals lying in, under and that may be produced therefrom together with the rights of ingress and egress for the purpose of producing the same." The terms of the corrective deed in the eyes of the court were plain, general, and had common meaning. However, the deed could not be carried out as written because the terms of the corrective deed were silent as to who gets the remainder interest in the minerals once Carl's life estate ended. The court resorted to the rules of construction in interpreting the corrective deed and found it conveyed Carl's interest to Appellee, except that portion of real estate he intended to retain. The court found Carl's use of "life estate" evidenced "his intent as grantor to retain something less than fee simple title to the minerals."

4

Further, the district court found the corrective deed was not subject to a judgment lien held by Darlene on the real property at the time of transfer from Carl to Appellee because Darlene filed her release of judgment. Based on the findings of fact and conclusions of law, the court granted Appellee's motion for summary judgment and denied Appellants' motion for summary judgment. "Fee simple title in and to an undivided one-half interest in and to all of the oil, gas, and other mineral lying in, under, or that may be produced from" the real property was then vested in and quieted in Appellee as against Appellants.

On appeal, Appellants argue the district court (1) improperly found the disputed deed was ambiguous as a result of a missing term; (2) improperly applied a statutory rule of construction to the facts; and (3) improperly interpreted the applicable statute of limitation.

Appellants first allege the district court improperly found the disputed deed was ambiguous as a result of a missing term.

"'The interpretation and legal effect of written instruments are matters of law, and an appellate court exercises unlimited review.'" *City of Arkansas City v. Bruton*, 284 Kan. 815, 828, 166 P.3d 992 (2007). "The question of whether a written instrument is ambiguous is a question of law subject to de novo review." 284 Kan. at 828.

The primary consideration when construing a deed is the intent of the grantor which is gathered from an examination of the instrument as a whole. *Central Natural Resources v. Davis Operating Co.*, 288 Kan. 234, 244, 201 P.3d 680 (2009). The first step is to determine whether the deed is ambiguous, which requires us to apply the plain, general, and common meaning from the terms used in the deed. 288 Kan. at 244. An instrument is ambiguous when the application of the applicable rules of interpretation as a whole fails to make clear which meaning is conveyed by the words used. 288 Kan. at

5

245. When ascertaining the meaning of the words used in the deed, it is necessary to consider them within the context that they are used. 288 Kan. at 245.

Appellant argues this court should rely on *Jameson v. Best*, 124 Kan. 633, 261 Pac. 582 (1927), to find there is no missing term in the deed. In *Jameson*, the Kansas Supreme Court considered a will and whether it disposed of the entire interest of the deceased. We cannot rely on *Jameson*, as it faced an issue surrounding a will, not a deed, and the analysis focused on rules of construction for wills, which are not applicable here. 124 Kan. at 635.

The language of the corrective deed granted to Appellee the surface and water rights. The issue then is who was to receive the remainder interest in the minerals when Carl passed away. Appellants argue the corrective deed was unambiguous because the presence of the specific limitation on the grant, "surface and water rights," is evidence that Carl did not intend Appellee to receive the remainder interest.

While the words of the corrective deed have common meaning, it is unclear who was to receive the remainder in the minerals once Carl's life estate ended. See *Central Natural Resources*, 288 Kan. at 244. Because the deed cannot be carried out as written because it was silent as to who gets the remainder interest in the minerals once Carl's life estate ended, the deed is ambiguous and it was necessary for the district court to resort to the rules of construction in interpreting the corrective deed. The district court did not err.

Appellants next contend the district court improperly applied a statutory rule of construction.

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Neighbor v. Westar Energy, Inc.,* 301 Kan. 916, 918, 349 P.3d 469 (2015). When interpreting written contracts, the primary rule of construction is to

6

ascertain the parties' intent. If the terms of the contract are unambiguous, the parties' intent is to be ascertained from the contract language without applying rules of construction. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014); *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013).

A written instrument will not be found to be ambiguous unless two or more meanings can reasonably be construed from the contract. The court will not strain to find an ambiguity where, in common sense, there is none. *Iron Mound v. Nueterra Healthcare Management*, 298 Kan. 412, 418, 420, 313 P.3d 808 (2013). Where ambiguity or uncertainty is involved in a written instrument, the parties' intentions are ascertained by considering the language used, the circumstances existing when the instrument was made, the objective of the written instrument, and other circumstances tending to clarify the real intention of the party or parties. *Byers v. Snyder*, 44 Kan. App. 2d 380, 386, 237 P.3d 1258 (2010), *rev. denied* 292 Kan. 964 (2011). See also *Amoco Production Co. v. Wilson, Inc.*, 266 Kan. 1084, 1088, 976 P.2d 941 (1999).

"Where there is an ambiguity in a deed making two constructions possible, one which will be favorable to the grantee and one more favorable to the grantor, and there is no outside aid to construction, that method of construction most favorable to the grantee will be selected." *Heyen v. Hartnett*, 235 Kan. 117, 122, 679 P.2d 1152 (1984). In addition, "a deed is to be construed strictly against the grantor and to confer upon the grantee the greatest estate that its terms will permit." *Fast v. Fast*, 209 Kan. 24, 27, 496 P.2d 171 (1972).

Appellants argue the district court should have relied on the plain language of the corrective deed and the law of future interests as set forth in *Jameson*. Appellants ask us to find a lesser estate was passed by the corrective deed and transfer of only the surface estate to Appellee was necessarily implied.

7

K.S.A. 58-2202 states, in part, that "every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear or be necessarily implied in the terms of the grant." When a landowner grants the land, without expressing an intent to retain his or her legal interest in the mineral rights, the legal interest passes with the land. *Chamberlain v. Schmidt*, No. 112,667, 2016 WL 563003, at \*6 (Kan. App. 2016) (unpublished opinion). The mineral rights follow the land unless expressly reserved. 2016 WL 563003, at \*6.

Here, Carl retained a life estate to the subject minerals. Based on K.S.A. 58-2202 and the above caselaw, the corrective deed should be construed to grant the surface and water rights and the remainder interest in the minerals to Appellee in fee. See *Heyen*, 235 Kan. at 122; *Chamberlain*, 2016 WL 563003, at \*6. The district court did not err.

Appellants also argue the district court improperly interpreted the applicable statute of limitations.

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Neighbor,* 301 Kan. at 918. The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016).

Under K.S.A. 60-507, an action to quiet title must be brought within 15 years from the date the cause of action accrues. Specifically, the statute states: "No action shall be maintained for the recovery of real property or for the determination of any adverse claim or interest therein, not provided for in this article, after fifteen (15) years from the time the cause of action accrued." K.S.A. 60-507. A cause of action only accrues when a party's possession of the property becomes hostile or adverse to the titleholder. *Mary*

8

*Constr. Co. v. Boldridge*, No. 94,595, 2006 WL 2864748, at *3 (Kan. App. 2006) (unpublished opinion).

Appellants argues the adverse claim that started the running of the statute of limitation was the sheriff's deed executed in 1990 because it challenged Appellee's claim to ownership of the remainder interest. They believe the proper remedy for Appellee would have been either to file suit for quiet title prior to 2005 or to sue the estate of the life tenant for waste for failing to challenge or correct the sheriff's deed.

Appellants' argument is not persuasive, as the sheriff's deed did not challenge Appellee's claim to ownership of the remainder interest. Under K.S.A. 60-2416, a sheriff's deed

> "shall vest in the purchaser as good and perfect an estate in the premises therein mentioned as was vested in the person or persons against whom the execution, writ or order was issued at or after the time when such lands and tenements became liable to the satisfaction of the judgment or lien for which the same was sold."

In addition, the Kansas Supreme Court has stated "a grantee in a deed acquires no greater title than his grantor had." *Ames v. Brooks*, 179 Kan. 590, 593, 297 P.2d 195 (1956). Therefore, Darlene only acquired a life estate, as that was the only interest Carl owned in the minerals after the corrective deed was recorded. The sheriff's deed only conveyed Carl's life estate to Darlene. See K.S.A. 60-2416. Appellee's remainder interest was unaffected.

This same argument was set forth in *Mary Constr. Co.*, where the Boldridges argued a cause of action accrues under K.S.A. 60-507 when a party becomes a titleholder of the property. This court stated if this were the case, "any party in possession of land for 15 years would have an absolute defense to quiet title action even if it was determined. . .

9

that the possession was never hostile or adverse to the titleholder." 2006 WL 2864748, at *3.

When Carl died on April 11, 2012, Darlene's life estate ended. See K.S.A. 60-2416. Then, Appellee's remainder interest in the minerals became adverse to Appellants' claim of ownership in the same minerals. Therefore, that event is what gave rise to the adverse claim and started the running of the statute of limitations. The district court correctly interpreted the statute of limitations and is affirmed.

Affirmed.